LOCKWOOD et al. v. FROST.   (No. 3225.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1926.)

1. **Mines and minerals ⬤⟿73—Leases and option to purchase, executed at same time as parts of same transaction, together constituted contract between parties.**

Oil and gas leases, and option to purchase land covered by them, which were executed at same time as parts of same transaction, together constituted contract between parties.

2. **Mines and minerals ⬤⟿73—Question whether lessee's option to buy part of demised premises was assignable held immaterial in suit to enforce it after assignee had reassigned to lessee.**

Question whether oil and gas lessee's option to buy part of demised premises was assignable held immaterial in suit to enforce it after assignment to another who had reassigned to lessee.

3. **Mines and minerals ⬤⟿74—Lessee held entitled to exercise option to purchase, notwithstanding assignment of lease.**

Oil and gas lessee held entitled to exercise option to purchase, though he assigned lease and option to another, especially where such other reassigned to him, since lessor cannot complain that exercise of option is inconsistent with rights of lessee's assignee.

4. **Specific performance ⬤⟿92(1)—Plaintiff's tender of performance of option contract on day before expiration of time for exercise held sufficient to entitle him to performance.**

Plaintiff's tender of performance of option for purchase of land on day before expiration of time in which he was entitled to exercise it held sufficient to entitle him to performance.

5. **Specific performance ⬤⟿97(1)—One seeking to enforce performance of option contract for purchase of land held not required to tender purchase price at trial.**

One seeking to enforce performance of option contract for purchase of land held not required to tender purchase price at trial; offer to pay being sufficient.

6. **Specific performance ⬤⟿131—Decree enforcing performance of option contract for purchase of land held not erroneous in specifying time within which parties were to perform.**

Decree enforcing performance of option contract for purchase of land held not erroneous in specifying time within which parties were to perform their respective obligations.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by H. G. Frost against Hiland P. Lockwood and others. Judgment for plaintiff, and defendants appeal. Affirmed.

This was a suit by appellee H. G. Frost against appellant Hiland P. Lockwood to enforce performance by Lockwood of a contract he entered into with Frost whereby the former undertook to convey certain land to the latter. The contract was evidenced by an instrument in writing, dated February 26, 1924, as follows:

"Whereas, the undersigned, Hiland P. Lockwood and H. G. Frost have entered into two certain oil, gas, and sulphur leases, one being for 229⅔ acres in the Thomas Alsbury Survey, in Brazoria county, Tex., and the other being for 247.4 acres in the said Thomas Alsbury Survey, but situated in Ft. Bend county, Texas;

"And whereas, the said H. G. Frost desires to have an option to purchase a part of each of the said tracts of land, and the said Hiland P. Lockwood is willing to grant such option, the said leases being part of the consideration for said option, reference, being made to the said leases for description of the said premises:

"Now, therefore, in consideration of the premises, I, Hiland P. Lockwood, have given and granted, and by these presents do give and grant, unto the said H. G. Frost the option to purchase the north two hundred acres of the said 229⅔-acre tract, at the price of forty dollars ($40.00) per acre, three thousand dollars ($3,000.00) in cash, and the balance to be divided into three equal annual installments or payments, due on or before one, two and three years from the date hereof, with interest at the rate of 8 per cent. per annum, payable annually, deferred payments to be evidenced by promissory notes, and secured by a vendor's lien and deed of trust on the said 200 acres, the notes to provide that failure to pay any one of them when due or any installment of interest when due, or the current taxes before they become delinquent, shall give the owner and holder of said notes, or any of them, the right at his election to declare all of the said notes due, and the said notes shall further provide for ten per cent. attorney's fees if placed in the hands

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of an attorney for collection, or if collected by suit, or through the Probate, Bankrupt or other court.

"And, in the event the option to purchase said 200 acres above mentioned is exercised within the time herein limited, a deduction of $1,148.-33 (eleven hundred forty-eight and 33/100 dollars) shall be made from the cash payment, and a charge of eight per cent. interest from February 26, 1924, to date of payment shall be added to the option price. The option to purchase the said 200 acres shall expire on the 26th day of August, 1924, unless it shall have been exercised and consummated on or before that date.

"And for the consideration aforesaid, the said Hiland P. Lockwood hereby gives and grants unto the said H. G. Frost the option to purchase the west 220 acres of the said 247.4 acre tract, also known as lot 7 of the original partition of the western part of the Thomas Alsbury 2 league, at the price of forty dollars ($40.00) per acre, two thousand dollars ($2,-000.00) cash, and twenty-five hundred dollars ($2,500.00) in one year, and twenty-one hundred fifty dollars ($2,150.00) in two years, and twenty-one hundred fifty dollars ($2,150.00) in three years, from August 26, 1924, with interest at eight per cent. per annum from February 26, 1924, payable annually, payments be evidenced by promissory notes for the denominations last above mentioned, payable on or before one, two and three years from August 26, 1924, and the said notes shall contain the same accelerating maturity clauses and attorney's fees clause as provided for the other notes above described, and their payment shall be secured by a vendor's lien on the said 220 acre tract, and also a deed of trust, such deed of trust in both instances to contain power of sale in conformity with the laws of Texas, regulating the sale of real estate under deeds of trust given to secure the payment of debt. The option to purchase the said 220 acres shall expire on the 26th day of August, 1924, if not exercised and consummated on or before that date.

"If the option to purchase herein granted is exercised under the terms herein contained as to either or both tracts, then and in such event if the option is exercised as to both tracts, the leases on both tracts, thereupon and thereby shall be canceled, and if the option is exercised only as to one tract, the lease upon that tract shall thereupon and thereby be canceled, it being understood that on the part of the land covered by the option lessee will purchase the fee including the royalty provided for in said lease, and will thereby become vested with the ownership of the entire land, as well as the entire minerals, and the lease shall be canceled and discharged as to the portion not covered by the option, and a formal release shall be executed discharging the lease or leases as to the part not embraced in the option."

The two leases referred to in the instrument set out above were also dated said February 26, 1924. The one for 229⅖ acres was to appellee, Frost, and "to his heirs, successors and assigns, for the purpose and with the exclusive right of exploring, mining, drilling and operating for and producing oil, gas, and sulphur."

The consideration for the lease was $1,148.-33 cash paid by appellee, "and the agreements and covenants" stated therein, among which was one that the lease should terminate at the end of one year from its date, unless actual drilling of a well for oil had commenced on the land within said year, or the lessee had acquired a right to have the time within which he was to commence such drilling extended over another year by paying to the lessor "five dollars per acre for the acreage contained in the tract."

The lease of the 247.4 acres was like the other one, except that the consideration therefor was recited to be "$1 cash paid by the lessee and the agreements and covenants" stated therein, and except that it was to terminate in six months from its date, unless actual drilling of a well for oil had commenced on the 247.4 acres, or upon land within one-half a mile thereof within said six months, or the lessee had acquired a right to have the time within which he was to commence such drilling extended a year beyond the six months by paying the lessor "five dollars per acre for the acreage contained in the tract." Appellant Chas. T. Lockwood was made a party defendant to the suit on an allegation that he was asserting some kind of a right in and to the 229⅖-acre tract of land.

The trial was to the court without a jury. He found that the leases and option contract referred to above were intended to evidence parts of one and the same transaction, and together constituted the contract between the parties, and made other findings as follows:

"(5) That by an instrument in writing, dated June 17, 1924, the said H. G. Frost assigned said leases to Rycade Oil Corporation, and, by another instrument in writing dated June 21, 1924, the said H. G. Frost assigned said option to said Rycade Oil Corporation, both of said instruments of assignment having been delivered by the said H. G. Frost to the said Rycade Oil Corporation contemporaneously and on June 21, 1924.

"(6) That thereafter, on July 10, 1924, Rycade Oil Corporation deposited in the Union National Bank of Houston, Tex., to the credit of Hiland P. Lockwood, $1,237, being the sum required to be paid within six months from February 26, 1924, under the provisions of the lease covering said 247.4 acres of land in order to avoid the cessation and termination of said lease at the expiration of said six months' period.

"(7) That thereafter, by an instrument in writing, made, executed, and delivered by Rycade Oil Corporation to H. G. Frost on and under date of August 23, 1924, said option was reassigned by said Rycade Oil Corporation to H. G. Frost, for the purpose expressed therein of investing the entire title to all rights, privileges, and options therein contained in the said H. G. Frost, to the end that he might be fully enabled in the exercise of said option to purchase and acquire the title to either or both of said tracts of land, which said instrument of reassignment contained, among other provisions, the following provision, to wit:

" 'Should the said H. G. Frost, in the exercise of said option, acquire title to both of said tracts of land covered and embraced in said option contract, irrespective of whether such title be acquired by conveyance from Hiland P. Lockwood or by decree of specific performance by a court of competent jurisdiction, or otherwise, then, upon the said H. G. Frost so acquiring title to said two tracts of land, it is agreed and understood that said oil, gas, and mineral lease covering said tracts of land shall stand canceled and annulled, as contemplated by the terms of said option contract, and shall further in all respects be released from said oil, gas, and mineral leases mentioned and referred to in said option contract, and as to all overriding royalties claimed or owned by the parties hereto in connection therewith.'

"(8) That thereafter, to wit, on the 25th day of August, 1924, the said H. G. Frost tendered to the said Hiland P. Lockwood in legal tender, in Houston, Harris county, Tex., the cash consideration required to be paid to the said Hiland P. Lockwood, for both of the tracts of land, described in said option agreement, according to the terms and provisions of said option agreement, and, further, at the same time tendered to the said Hiland P. Lockwood all promissory notes, duly executed by the said H. G. Frost, required by the said option agreement to be made, executed, and delivered by the said H. G. Frost to the said Hiland P. Lockwood in part payment for both of said tracts of land, and further at the same time tendered to the said Hiland P. Lockwood deeds of trust duly executed by the said H. G. Frost, upon said tracts of land to secure the payment of said notes, with the name of the trustee therein left blank, and with the statement to the said Hiland P. Lockwood that he might fill in said blanks with the name of any trustee he desired, and then and there at the same time offered to do and perform all things requisite to be done and performed by him under the terms and provisions of said option agreement to entitle him to deeds from the said Hiland P. Lockwood conveying said two tracts of land, and then and there at the same time presented to the said Hiland P. Lockwood forms of deeds which he, the said H. G. Frost, had caused to be prepared in conformity with the terms and provisions of said option agreement, with the request that the said Hiland P. Lockwood make, execute, and deliver said deeds to him, the said H. G. Frost, and then and there at the same time exhibited and tendered to the said Hiland P. Lockwood the said reassignment from Rycade Oil Corporation, and releases duly executed and acknowledged by all parties interested in said oil, gas, and mineral leases of said leases in so far as they pertain to those portions of the said 229⅗ acres tract of land and the said 247.4 acres tract of land not embraced in and covered by said option agreement.

"(9) That, upon such tender being made, the said Hiland P. Lockwood requested that he be given time to look over said instruments in writing so tendered, and the same were thereupon left with him, and on the following day, to wit, August 26, 1924, the said Hiland P. Lockwood declined the said tender, and refused to make, execute, and deliver deeds to the said H. G. Frost conveying the tracts of land covered by said option agreement, and advised the said H. G. Frost that he would not carry out the said option agreement by deeding said tracts of land to said H. G. Frost.

"(10) That in rejecting said tender, and in refusing to make, execute, and deliver deeds to the said H. G. Frost under said option agreement, the said Hiland P. Lockwood made no objection to the form or substance of any of the instruments tendered by the said H. G. Frost for the purpose of carrying out said transaction, nor any suggestions as to any changes therein, and that prior to said tender the said Hiland P. Lockwood had informed the said H. G. Frost that he did not intend to carry out said option as to the two tracts of land embraced therein.

"(11) That there is an incumbrance against the said 247.4 acres tract of land in the form of a promissory note for $2,500 given by Hiland P. Lockwood to William Rees, payment of which is secured by a certain deed of trust on said tract of land, executed by Hiland P. Lockwood and Mary V. Lockwood to Evan Rees, trustee, dated November 27, 1923, and of record in the Deed of Trust Records of Ft. Bend county, Tex., in volume 6, pages 73–75, which said note is dated November 27, 1923, bears 8 per cent. per annum interest from its date, and is payable two years after its date, and that at the time when said option agreement was entered into it was understood and agreed between the said Hiland P. Lockwood and the said H. G. Frost that the said Hiland P. Lockwood would pay off and discharge said note in favor of William Rees by exchanging therefor the $2,500 note to be given by the said H. G. Frost to Hiland P. Lockwood in part payment for the west 220 acres of said 247.4 acres tract.

"(12) That on January 15, 1925, Rycade Oil Corporation deposited in the Union National Bank of Houston, Tex., to the credit of Hiland P. Lockwood, $1,148.33, being the amount required to be paid within one year from February 26, 1924, under the lease covering said 229⅗-acres tract of land in order to avoid the termination of said lease at the expiration of said one-year period, and that at the time such payment was made the said Hiland P. Lockwood had declined to carry out said option agreement and was contesting said option agreement, and denying any obligation upon his part to carry it out, and that said payment was made by Rycade Oil Corporation as a precautionary measure in order to preserve its rights.

"(13) That the said H. G. Frost is ready, able, and willing to carry out said option agreement on his part."

On the facts found by him as shown above the court concluded as matters of law:

"(1) That the option given by the said Hiland P. Lockwood to the said H. G. Frost conferred upon the said H. G. Frost a valuable right based upon a valuable consideration to purchase the two tracts of land described in said option agreement, at the price and upon the terms therein stated.

"(2) That at the time when the said H. G. Frost tendered to the said Hiland P. Lockwood performance by the said H. G. Frost of all matters and things required to be done by him in order to entitle him to have the said Hiland P. Lockwood execute deeds to him conveying said two tracts of land, the said option was vested in the said H. G. Frost, and he was en-

titled to exercise it and to require the said Hiland P. Lockwood to make, execute and deliver to him deeds conveying said two tracts of land upon his complying with his part of the option agreement.

"(3) That the right of said H. G. Frost to exercise said option was unaffected by the assignment by him of said leases to Rycade Oil Corporation, for the reason that the said option agreement provided that upon its being exercised said leases should thereupon and thereby be canceled, and all persons having any interest in said leases had actual knowledge of the provisions of said option agreement to the effect that the exercise of said option would cancel said lease.

"(4) That the said H. G. Frost, having prior to August 26, 1924, tendered to the said Hiland P. Lockwood full performance upon his part of all things required to be done by him in order to entitle him to exercise said option, became entitled to have the said Hiland P. Lockwood make, execute, and deliver to him deeds sufficient to convey to him the fee-simple title to said two tracts of land covered by said option.

"(5) That the said Hiland P. Lockwood, having refused, upon sufficient and timely tender made by the said H. G. Frost under the provisions of said option agreement, to make, execute, and deliver deeds to the said H. G. Frost for said tracts of land, is in default, and that the plaintiff, H. G. Frost, is entitled to a decree of specific performance herein, against the said Hiland P. Lockwood.

"(6) That the plaintiff, having tendered full performance in his petition herein, but not having actually paid into court the cash consideration required to be paid, the ends of justice will best be met by a conditional decree in this cause which will fix a time within which, the plaintiff may pay the required cash consideration to the clerk of this court, and make, execute, and deliver to the clerk of this court such instruments in writing as are necessary to be made, executed, and delivered by him in order to carry out his part of the option agreement, and fixing the time thereafter within which the defendant Hiland P. Lockwood shall make, execute, and deliver to the plaintiff his deeds covering said two tracts of land, with provision that, when such deeds are executed, they shall have the effect of passing to the plaintiff all right, title, and interest of both of the defendants, namely, Hiland P. Lockwood and Charles T. Lockwood, and with further provision relieving the plaintiff of the necessity of paying the cash consideration to the clerk of this court, and making, executing, and delivering the instruments necessary to be made, executed, and delivered by him, until within a fixed time after the mandate of the higher court is filed in this cause, in the event this cause is taken up by appeal or by writ of error, and with further provision enjoining the said Hiland P. Lockwood from disposing in any way of the notes to be executed by the plaintiff until he has paid and discharged the said note in favor of William Rees, and decree will be entered accordingly."

The appeal is from a judgment in appellee's favor in conformity to the findings and conclusions of the trial court set out above.

Ross & Wood, of Houston, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

WILLSON, C. J. (after stating the facts above). [1, 2] The leases and option to purchase land covered by them were executed at the same time, as parts of the same transaction, and together, therefore, constituted the contract between the parties. 13 C. J. 528. Conceding that the leases were assignable by the express terms thereof, appellants nevertheless insist that the option to purchase land covered by them, constituting part of the contract, was not assignable because personal to appellee. Therefore, they insist further, the assignment of that option by appellee to the oil corporation was void. Keeping in mind the fact that the leases and option to purchase are all parts of the contract, it would seem, in view of the provision in the leases authorizing the assignment thereof and the absence of a provision in the option forbidding it, that the option also was assignable. Whether it was or was not, we need not determine, however; for if it was not, and the assignment of it by appellee to the oil corporation was therefore void, as appellants contend it was, the right to exercise the option did not pass to the oil corporation, but remained in appellee, and hence, in that view, no right of appellants was affected by the assignment. On the other hand, if the assignment was not void, then all right thereby acquired by the oil corporation passed back to appellee when that corporation reassigned the option to him, and hence, in that view also, no right of appellants was prejudiced by the assignment of the option to the oil corporation.

[3] The contention that appellee, having a right to continue the leases or to purchase land they covered, elected to continue the leases when he assigned same to the oil corporation, and thereafter was without right to exercise the option to purchase, seems to be on the theory that a continuance in him of a right to exercise the option after he assigned the leases was inconsistent with rights acquired by the oil corporation as his assignee. If that is true, it would seem that the inconsistency was of no concern to appellants, but was a matter of which the oil corporation alone had a right to complain. It is plain from the terms of the contract between appellee and appellant H. P. Lockwood, of which the oil corporation had full notice, that the corporation as assignee of the leases would have been as much bound by appellee's exercise of the option as appellee himself would have been had he never assigned the leases. Moreover, the rights of appellants were fully protected from any prejudicial consequences to them flowing from the oil corporation's ownership of the leases by provisions in the instrument whereby the oil corporation reassigned the option to purchase to appellee.

[4] The contention that it did not appear

that appellee had made such tender of performance of the contract on his part as entitled him to a decree requiring appellants to perform it is on the theory that the tender by appellee was not made until the day before the expiration of the time within which, by the terms of the contract, he was entitled to exercise the option. The reason why the contention should be overruled appears in the statement of it, in that it there appears that the option was exercised by appellee within the time allowed him to exercise it by the terms of the contract.

[5] The contention that appellee was not entitled to the relief granted to him because he did not at the trial actually tender into court the cash consideration he was to pay if he exercised the option and purchase the land is without merit. "If it be money that is tendered, a simple offer to pay it is a sufficient tender in equity without bringing the money in court, because a court of equity can decree performance on payment of the money and not permit the title to pass until then." Simkins on Equity, 700; Fordtram v. Dunovant, 54 Tex. Civ. App. 564, 118 S. W. 768; Beaton v. Fussell (Tex. Civ. App.) 166 S. W. 458.

[6] We do not agree with appellants that the decree was erroneous so far as it specified time—not attacked as unreasonable—within which the parties were to perform their respective obligations under the contract. The provisions of the decree in that respect seem to be in accord with the practice in such cases. Kalklosh v. Haney, 4 Tex. Civ. App. 118, 23 S. W. 420; Bateman v. Hopkins, 157 N. C. 470, 73 S. E. 133, Ann. Cas. 1913C, 642; Le Vine v. Whitehouse, 37 Utah, 260, 109 P. 2, Ann. Cas. 1912C, 407. Other contentions by appellants not disposed of by what has been said are overruled as also without merit.

As we view the record, the case on its merits is as appellee presented it in his brief when he said:

"Under the option agreement Lockwood was entitled to a certain cash consideration, to the personal notes of H. G. Frost, to deeds of trust securing these notes, and to formal releases of the mineral leases on those portions of the lands not covered by the option agreement. All of these were tendered him. The mineral leases would have been automatically canceled by the exercise of the option, and the holder of those leases executed, and caused to be tendered to him, an instrument in writing agreeing that the leases should stand canceled and annulled by the exercise of the option. He obviously for some reason did not want to carry out the option agreement. It is not contended that the leases would have remained in force, or, if such contention is made, it is manifestly unsound, because the owner of the leases expressly agreed in writing that they should stand canceled and annulled by the exercise of the option. The situation might be different if Lockwood were not getting all that he is entitled to under the terms of the option agree-ment, but in what way can he possibly be prejudiced by being compelled to carry out his contract? Such delay as has been occasioned is the result of his own default, for the plaintiff promptly tendered performance of everything required of him, and the transaction would have been consummated long ago had not Lockwood declined to carry it out. In the event of the affirmance of the judgment the plaintiff will be required, within what must be conceded to be a reasonable time after the mandate is filed in the lower court, to pay the cash consideration into court and deliver to the clerk of the court the notes, deeds of trust, and other instruments in writing required to be delivered by him, and only in the event he does so will Lockwood be required to do anything. In other words, there will be no decree for specific performance, and no burden imposed upon Lockwood, if the plaintiff, within the reasonable time fixed by the court, does not perform the conditions precedent prescribed in the decree."

The judgment is affirmed.