(No. 18900.—

SARALTA SCHMIDT, Appellee, *vs.* JOHN F. BARR *et al.*
Appellants.

*Opinion filed February 20, 1929.*

KELLY & MURPHY, (JOHN E. KELLY, of counsel,) for
appellants.

LARAMIE & SHERWIN, and CHARLES N. GOODNOW, for
appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Saralta Schmidt (who will be referred to as complainant) filed her bill in the circuit court of Cook county against
defendants, John F. Barr and Malcolm E. Barr, his son,

(who will be referred to as defendants,) for the specific performance of a contract for the sale of real estate. There was a hearing before the chancellor, covering a period of about sixteen months, and a decree was entered as prayed. Defendants prosecuted an appeal to the Appellate Court for the First District, where the decree was reversed and the cause remanded, with directions to dismiss the bill for want of equity. Complainant filed a petition for a rehearing, urging that the Appellate Court was without jurisdiction of the appeal because a freehold was involved. The petition for rehearing was denied and complainant prosecuted a writ of error from this court to review the judgment of the Appellate Court. This court (328 Ill. 365,) held that a freehold was involved, the judgment of the Appellate Court was reversed and the cause remanded to that court, with directions to transfer the case to this court.

A motion has been made in this court by complainant to affirm the decree of the circuit court, which motion has been taken with the case. The grounds of the motion are, that the abstracts and briefs filed in the Appellate Court have not been transferred to this court; that the briefs and abstracts filed in this court upon the writ of error have been re-filed upon this appeal, therefore the case as presented to the Appellate Court is not before this court and the decree of the circuit court should be affirmed. There is no merit in this contention. The written motion shows that the briefs filed in the Appellate Court have been destroyed. Briefs and abstracts have been filed by both parties in this court, the case will be considered on the briefs filed, and the motion to affirm the decree of the circuit court will be overruled.

The contention of complainant is that on March 20, 1922, John F. Barr agreed to sell the real estate in question to complainant for $17,500, and he was paid $250 by check and executed a receipt therefor; that the next day a written contract of sale was executed, $2250 was paid in cash,

and the contract recited a payment of $2500; that on April 11, 1922, $1500 was paid in cash; that there was a mortgage on the property for $6000, by agreement of the parties it was increased to $8000, complainant arranged for a second mortgage for $5500, and she had the money ready to pay on the day of settlement; that about September 19, 1922, the parties met in the office of the Chicago Title and Trust Company, and complainant tendered Barr a certified check for $5000 and $500 in cash; that Barr refused to accept the tender or to deliver a deed on the ground that he had only received $1000 instead of $4000, as contended by complainant, and he demanded payment of the balance and signified his willingness to convey when the balance was paid.

Defendants contend that on March 20, 1922, William M. Weitz, a real estate agent, told John F. Barr he could sell his property for $17,500; that he paid Barr $250 without disclosing the name of his principal and Barr executed a receipt for that amount, which recited that the money was deposited on the purchase price and contained a description of the property; that Barr gave Weitz the policy issued by the Chicago Title and Trust Company showing title in Barr, subject to the $6000 mortgage; that Weitz asked Barr to increase the mortgage to $8000 and Weitz agreed to pay the expense of the increase; that Barr had the mortgage increased and so informed Weitz; that on April 11, 1922, Weitz gave Barr a check for $750; that from April 11 to September 9 Weitz called on Barr several times, but he paid no more money and did not pay the cost of increasing the mortgage nor offer to make any adjustments of taxes, rents, or other matters connected with the deal. Barr contends that he never received more than $1000, and that the only instrument ever executed by him was the receipt of March 20, 1922, which has been altered since he signed it. He also claims that the alleged contract of March 21, 1922, and the receipt for $1500 dated April 11, 1922, are forgeries.

It is admitted that $250 was paid on March 20 by a check signed by Weitz and that the genuine signature of Barr is indorsed on the back of the check, the body of which is in the handwriting of Weitz. All of the exhibits introduced in evidence have been certified to this court. The bottom of this check contains the following notation: "Deposit on 67th and Indiana Building for S. Schmidt." Barr testified that this notation was not on the check when it was delivered to him or at the time it was deposited by him in the bank. A receipt in the handwriting of Weitz, dated March 20, 1922, for $250, was admitted in evidence. It is agreed that it bears the genuine signature of Barr. If this receipt was executed on the date it bears it was altered after it was signed. Between the last line of the body of the receipt and the signature of Barr is the following: "Balance due $13,500.00—3/21/22, cash $2250.00," and below is "4/11/22, $1500.00." These entries are in ink of a different color from that in the body of the receipt and were evidently added for the purpose of showing the two payments which complainant claims to have made. If the receipt was executed on the date it bears these entries could not have been on it when it was originally made, for the reason that these payments were not made until after the date of the receipt. Weitz testified that when he gave the check for $250 on March 20, 1922, he did not take a receipt from Barr because he considered the check was a sufficient receipt; that on the check he noted that it was on account of the purchase price of the property, and he told Barr he would later bring a contract to be signed. Barr testified that he did not give a receipt to Weitz for $250 on March 20, 1922, and did not sign any paper for Weitz until April 11, 1922, when Weitz gave him a check for $750; that he then signed a paper which was drawn up in his office by Weitz and which he never saw afterwards until the trial. Barr denies that he signed the alleged contract of sale dated March 21, 1922, but he admits that the re-

ceipt for $250 was signed by him at a later date and was the only evidence of the contract which he executed. While Weitz testified that he received no receipt for the $250, complainant in her arguments contends that this receipt was executed on March 20. Regardless of whether the receipt for $250 was signed on March 20, the date it bears, or whether it was signed on April 11, as some of the evidence shows, it is apparent that the instrument was changed after it was signed, by the insertion of the notations just above the signature. The contract of March 21, 1922, recites that $17,500 was the contract price and that $15,500 remained unpaid. This recital is not in accord with the present claim of complainant. If $2500 was paid, as the contract recited, and the sale price was $17,500, only $15,000 balance would be due.

Max Feilschmidt testified that on the morning of March 21, 1922, between 9:30 and 10:00 o'clock, he went with Weitz to the office of Barr. He saw Weitz hand Barr a lot of money, which Weitz said was $2250, and Weitz handed Barr two papers, which Barr signed. Barr testified that the witness was not in his office on this occasion or on any other occasion, and that he never saw the witness prior to the time he met him when the final settlement was attempted to be made, which was about six months after the incident in question. Weitz testified to the payment of this $2250 and the execution of the contract of sale on the same day. He testified that on April 11, 1922, at Barr's office, he paid Barr $1500 in cash and received a receipt from Barr for that amount. A receipt for that amount under that date was offered in evidence. Barr testified that he never received $1500 on that date; that he never signed such a receipt; that on April 11, at his office, Weitz gave him a check for $750, and Barr signed the receipt for $250 dated March 20, 1922. Weitz denies that he paid Barr $750 on that date by check. He claims that on that date he paid

$1500 in cash and received the written receipt offered in evidence.

Malcolm E. Barr, John's son, testified that he was present in his father's office on April 11, 1922; that Feilschmidt was not there at the time; that Weitz gave his father a check for $750; that Weitz stated he wished to show his good faith in the deal; that he would be back a little later to close the deal; that Weitz gave his father a paper purporting to be an agreement, which was written by Weitz on the stationery of Barr; that $1500 in cash was not paid to his father at that time; that no receipt for $1500 was executed, and that he made out the deposit slip for the deposit of the $750 check in the bank. He testified he was present when the $250 check was delivered on March 20, 1922.

In corroboration of his testimony that $750 was paid on April 11 Barr offered to show that in the course of his business he kept no cash book; that his only record consisted of duplicate bank deposit slips showing each item which he deposited in the bank and what it was for. He offered all of his duplicate slips from October 21, 1921, to March, 1923. He offered a duplicate slip of March 17, 1922, showing a credit of $1708.09, being the amount received by him when the mortgage was increased from $6000 to $8000. He offered a duplicate slip of March 23, 1923, showing an item of $250, being the check received from Weitz on March 20, 1922, with a notation on the slip that it was a payment on the purchase price of the property in question. He offered a duplicate slip dated April 14, 1922, showing a deposit of $750, with a notation that it was from Weitz on the sale of the property in question. He offered his bank deposit book showing an entry and credit of that amount on that date. Objections were sustained to these offers and error is assigned thereon. The objections were properly sustained. The slips offered were duplicates and not the originals. No attempt was made to produce the

originals or to account for them. The books of the bank were not offered to show that the deposits were made. Barr had a right to testify when, where and how the deposits were made and where the money came from. He had a right to show by the books of the bank what money was deposited and when the deposit was made, but on the records as presented the objections to the duplicate slips were properly sustained.

In connection with the payment of the $750 Barr offered in evidence the bank ledger sheets showing the account of Weitz in his bank. These showed a debit of $750 against Weitz dated April 15—the day after Barr testified he deposited a check for that amount given him by Weitz. The book-keeper of the bank testified that this debit consisted of a check. On cross-examination Weitz was asked if he did not give Barr a check for $750 in April on the purchase price of this property, and he replied that he did not believe he did—that he could not recall. The books of the bank strongly tended to corroborate the statement of Barr that on April 11 the amount paid to him was $750 instead of $1500, as testified to by Weitz. They also tended to contradict the receipt for $1500, dated April 11, 1922, purporting to have been signed by Barr and which he declared was a forgery.

A subpœna was served on Weitz to produce all of his canceled checks, including the check for $750. He said he did not have any of the checks except the one for $250, which he had given to complainant as a receipt. He testified that in April or May, 1922, he had a fire in his office and most of his checks and books were destroyed; that he was home at the time, sick; that later his office was entered, and the police notified him that some boys had carried everything out of the office. A lieutenant of the fire department testified that he was a fireman in the district in which Weitz's office was located; that he responded to a fire alarm on that occasion, and that the fire occurred on

March 23, 1921, which was one year prior to the time the check in question was issued. This lieutenant was corroborated by records of the fire marshal's office admitted in evidence. If the fire occurred a year before the checks were issued the fire was no excuse for not producing the checks.

Complainant in this case is the wife of Alex Schmidt, who testified that he signed the contract of sale dated March 21, 1922, under a power of attorney executed by his wife. She did not sign the contract and did not appear on the trial or take any part therein. Schmidt testified that when he signed the contract there were no other signatures upon it; that after he signed it he gave it to Weitz, who returned it in a day or two with Barr's signature upon it. He testified that he owned a grocery and market, and his sales amounted to $250 on week days and $1000 on Saturdays. He kept two bank accounts but was very irregular in making his deposits, keeping large sums of money on hand. He testified that he had known Weitz ten years and had purchased lots of property through him. He did not know how many pieces he had purchased but had purchased at least six or seven. He testified that when he signed the contract he gave Weitz $2250 in cash about 8:00 o'clock A. M., March 21. He was asked where he got the $2250, and replied that he had it in the house; that Weitz told him on March 20 to have the $2250 in cash ready, because he was going to bring the contract to be signed. He later said he got a part of the money from the bank but did not know how much. He testified that he gave Weitz $1500 in cash in April, and Weitz later delivered a receipt to him signed by Barr. Weitz testified that he got all of the $4000 from Schmidt in cash, in three payments; that he got the $2250 from Schmidt on the morning of March 21 at his store, between 8:30 and 9:00 o'clock. He got the $1500 on the morning of April 11. It was in five, ten and twenty-dollar bills. He took it right down to Barr because he did not want to carry it around. He testified that he had sold

Schmidt several pieces of real estate and had received his check for $2000 or $3000, as the transaction required, and there were a number of times when Schmidt paid him in cash.

Sarah Munsinger obtained a judgment by confession in the municipal court of Chicago against Schmidt for $135, being the rent of a store building from March to July, 1919. In June, 1921, after considerable delay, Schmidt filed a sworn petition in the municipal court to vacate the judgment, in which he alleged that on October 1, 1917, he leased the storeroom from the real estate agent of the owner for one year, beginning October 1, 1917, at $25 per month, with an agreement for two years more at $30 per month; that on May 15, 1918, he sold his business and assigned the lease with the knowledge and consent of the lessor and was released by her from further obligations; that the part of the lease showing the term was changed after the lease was executed and different terms were inserted; that the lease was prepared by plaintiff's real estate agent, Weitz, who had charge of the premises and collected the rents until May 15, 1918; that it was not until Schmidt found his duplicate lease, which had been lost, that he had the means of showing by documentary evidence the fraud which had been perpetrated upon him by plaintiff or by her real estate agent. The petition further alleged that Schmidt was a poor man and was in no position to start any litigation without having documentary proof to substantiate his testimony. The petition was sworn to by Schmidt before a notary public who was one of his solicitors in this case. The effect of this evidence was to cast doubt upon the testimony of Schmidt in this case. His evidence as to his financial standing could not have been true in both cases. In one case it had to be false. If he swore falsely in one respect we have the right to question his entire evidence. It is also significant that in the other case Schmidt charged fraud and forgery in a transaction handled by Weitz, who

is his principal witness in this case, where fraud and forgery are also charged.

A handwriting expert testified that the signatures of Barr to the contract of March 21 and to the receipt for $1500 on April 11, 1922, were made by the same person who signed some of the other instruments admitted to be genuine, but he admitted that in certain respects they were not alike. There are some facts in evidence, in addition to the signatures themselves, which are very significant. In the signature on the contract of March 21, 1922, the "o" is omitted from the name John, the signature has the appearance of having been gone over more than once, and it only bears a slight resemblance to the signatures which are admitted to be genuine. The signatures admitted to be genuine are each in black ink, while the check for $250, including the signature thereto, the receipt of April 11, 1922, for $1500, including the signature, and the body of the receipt of March 20, 1922, are all in purple ink. The last three instruments were written by Weitz. Schmidt testified that when he signed the contract of March 21 there was no other signature on it and that he signed it at his store; that Weitz took the contract away and brought it back the next day, signed by Barr. Weitz testified that Schmidt and Barr signed the contract in his presence and that it was written and signed in Barr's office. Feilschmidt testified that on March 21 he saw Barr sign a contract in Barr's office and saw Weitz pay him $2250 in cash. Weitz testified that the check for $250 was written in Barr's office on March 20 and only he and Barr were present. The receipt for $250 was written by Weitz on a letter-head of Barr. The signature to a typewritten letter to complainant from Weitz, dated September 23, 1922, is in purple ink. A letter to Barr from one of the solicitors for complainant in this case, written in September, 1922, is signed in purple ink. It is apparent that Weitz used in his office purple ink similar to the kind found in these various instruments.

If a contract is freely and voluntarily executed and its terms are clear and specific and it is free from objection specific performance will be decreed as a matter of right and not as a matter of favor. (*Allen* v. *Hayes*, 309 Ill. 374; *Woodrow* v. *Quaid*, 292 id. 27; *Ullsperger* v. *Meyer*, 217 id. 262.) The terms must, however, be clear, certain, and free from ambiguity and doubt. (*Moore* v. *Machinery Sales Co.* 297 Ill. 564; *Gronowsky* v. *Jozefowicz*, 291 id. 266.) The contract must be enforced according to its terms or not at all. A court is without authority to compel a party to do something he did not contract to do. (*Cable* v. *Hoffman*, 273 Ill. 272; *Rampke* v. *Beuhler*, 203 id. 384.) A party seeking performance must show that he has complied with all of the terms of the contract at the time and in the manner therein provided. (*Cobb* v. *Willrett*, 313 Ill. 92; *Carver* v. *VanArsdale*, 312 id. 220; *Lanski* v. *Chicago Title and Trust Co.* 324 id. 367.) The contract in this case does not contain the entire agreement between the parties. It provided for a cash consideration. There was a mortgage on the property which was not mentioned in the contract. Provision was made for an adjustment of taxes, rents and other matters connected with the deal, but no evidence was offered in reference thereto. The preponderance of the evidence does not show that Barr signed the contract, or that complainant complied with the terms thereof or was able, ready and willing to do so.

The decree will be reversed and the cause remanded, with directions to dismiss the bill for want of equity.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*