MOORE et ux. v. KIRGAN et al.

No. 4854.

Court of Civil Appeals of Texas. El Paso.

Feb. 27, 1952.

On Rehearing April 9, 1952.

Further Rehearing Denied May 14, 1952.

John T. Hill, El Paso, for appellants.

Joseph L. Dunigan, T. W. Bittick, El Paso, for appellees.

McGILL, Justice.

This is a suit to specifically enforce an alleged accepted option to purchase the

leased premises contained in a lease of the north 25 feet of the west 10 feet of lot 1 and north 25 feet of Lots 2, 3 and 4 in Block 56 of Logan Heights Addition to the city of El Paso County, Texas.

Appellees were plaintiffs and appellants were defendants in the trial court. Trial was to a jury and upon their verdict, consisting of answers to certain special issues, the court rendered judgment that plaintiffs have specific performance of the option agreement by defendants, and that defendants convey to plaintiffs said property by warranty deed, with guaranty title policy or abstract of title, as per the terms of the option, and recover of defendants all costs.

The lease was dated and executed October 4, 1945, and was for a term of five years, terminating on October 3, 1950. Appellants were the owners of the property and the lessors in the lease. Mrs. Nannie Mayes and John L. Phaup were the lessees. The consideration stated is the sum of $3,-600 to be paid in monthly installments of $60 each in advance, the first due on execution of the lease and one due on the 4th day of each month thereafter during the term. The controversy centers around the following clause of the lease, which is typewritten near the end of the printed form just above the signatures:

"The lessees shall have the right to assign this lease or underlet said premises to a purchaser of the business operated thereon by the lessees and the lessees are hereby given an option to buy said real estate covered by this lease at any time during the term of this lease for the sum of $2,250.00, and if so purchased lessors, will convey title by regular warranty deed and furnish a policy of title insurance, or abstract with customary beginning point and with customary provisions."

At the time the lease was executed appellants owned and operated a restaurant on the premises. The lessees purchased the restaurant fixtures and stock from lessors for about one thousand dollars. Plaintiff Alice M. Kirgan is the remote assignee of the lease, it having been transferred by the

original lessees to Alfred R. Stewart and wife, Marie N. Stewart, on March 26, 1946; by Stewart and wife to Arthur Venzor and wife, Ernestine Venzor, on June 22, 1946; by Venzor and wife to Ethel H. Coleman on October 18, 1947; by Ethel H. Coleman and husband, Sylven Coleman, to Margaret Bodnar on December 29, 1947, and by Stephen Bodnar and Margaret Bodnar to plaintiff Alice M. Kirgan on June 7, 1948. On these dates the various assignors also sold and transferred to the assignees the fixtures and restaurant business located on the property.

The jury found that the option to buy the real estate was not limited to the original lessees Mayes and Phaup and that the option was accepted by plaintiffs.

Appellants have presented thirteen points which in substance embrace the following propositions: Plaintiffs' pleadings failed to allege a cause of action and the court erred in not entering judgment for defendants because the option clause of the lease was limited and personal to the original lessees and not assignable; appellants received no consideration for such clause and in the alternative the undisputed evidence shows that the right to purchase the property was granted by appellants to the original lessees only; the finding that the option was exercised by plaintiffs is not supported by the evidence because the option was unassignable and without consideration and had been revoked by appellants and appellees so notified before they went into possession of the property, and appellee Alice M. Kirgan abandoned the option by requesting appellants to grant her a lease for one year and make improvements on the building on the property prior to May 26, 1950. There are other points which we shall refer to later.

Most of appellants' contentions are answered by this very clear and succinct statement from Corpus Juris:

"182. Nature of Contract. An option to purchase, being an integral part of a lease, is a substantial part of the whole contract, and is not obnoxious to the objection that there is a want

of mutuality, and the agreement to pay rent or do other acts will support the option as well as the right to occupy under the lease, and bind the lessor notwithstanding the lessee is not bound to purchase. The lessor cannot withdraw his offer before the time for its acceptance has expired, without the lessee's consent, although the contract is not under seal, or after the lessee exercises the option according to the terms of the agreement. The option constitutes a completed purchase of a right to have a conveyance if the purchaser shall choose to buy on the terms named. And while no right or estate in the land passes under a covenant for an option to purchase, it is an inchoate right which will be protected in equity pending the option period. The option to purchase is a covenant running with the land." 35 C.J. 1038, Sec. 182.

That the consideration of the lease, the agreement to pay rent where the lease and option constitute but one contract the provisions of which are interdependent will support the option. See also 51 C.J.S., Landlord and Tenant, § 81(c), page 636; Meadow Heights Country Club v. Hinckly, 229 Mich. 291, 201 N.W. 190; and from our own jurisdiction see Hereford v. Tilson, Tex.Civ.App., 198 S.W.2d 275, loc. cit. 278 (4, 5). Reversed on other grounds, 145 Tex. 600, 200 S.W.2d 985.

We see nothing in the present lease to take it out of the general rule. The testimony of appellant Robert Moore to effect that the parties had agreed on a rental of $60 per month as consideration for the lease which it was understood covered the use of the property only, and that after the lawyer had prepared the lease in accordance with such understanding he, the witness, gratuitously gave the option to purchase, cannot alter the legal effect of the instrument. All negotiations and conversations between the parties prior to the execution of the written contract were merged into it. The instrument itself evidences ample consideration for all of appellants' covenants therein contained, including the option. See Hereford v. Tilson,

supra, 198 S.W.2d loc. cit. 279 (8). Since the option was supported by a valid consideration it could not be revoked or cancelled by the lessors without the consent of lessees during the term of the lease, the period for which it was granted. Northside Lumber & Building Co. v. Neal, Tex.Civ. App., 23 S.W.2d 858, loc. cit. 859 (3-5); 51 C.J.S., Landlord and Tenant, § 84(a), page 643. The question then arises whether the option was assignable and passed with the lease to plaintiff Alice M. Kirgan, and whether if so it was accepted by defendants during its term.

An annotation in 38 A.L.R. p. 1163, lays down the following rule:

"Ordinarily, where a lease of real property contains an agreement giving to the lessee the privilege of purchasing the property covered by the lease, under stated conditions, the option to purchase passes upon assignment of the lease to the assignee thereof, entitling the latter to specific performance of the agreement to convey, upon compliance with such conditions."

Among the supporting authorities there is cited Menger v. Ward, 87 Tex. 622, 30 S.W. 853, 854. This case recognizes the general rule in the following language:

"It has been held in a number of courts that, where the lease contains an agreement that the lessee may purchase the land during the continuance of the lease, the assignment of the lease conveys to and invests in the assignee the same right. Kerr v. Day, 14 Pa. 112; Jackson v. [ex dem] Livingston [v. Groat], 7 Cow [N.Y.] 285; Laffan v. Naglee, 9 Cal. 662; Hall v. Center, 40 Cal. 63; Schroeder v. Gemeinder, 10 Nev. 355."

However, the rule was not applied because the option there considered provided for payment of $3,000, one-fourth cash, balance in equal installments on or before one, two and three years, and the court held that since that called for the personal credit of the buyer it was not assignable. The court said:

"In all of the cases cited, and all that we have found, which hold the doctrine

that the assignment of the lease carries with it the privilege to purchase the property where that right is given to the lessee by the contract, the terms of purchase prescribed were for cash, or no terms of payment were fixed beforehand. In such case it might be consistently held that the privilege was not personal, for the reason that in the exercise of the right no new contractual relations would be created in case of cash payment, and, in cases where no terms were fixed, the owner of the land could make the payment cash, if he did not choose to grant a credit, and thus the terms would be a matter of agreement."

In Nardis Sports Wear v. Simmons, 147 Tex. 608, 218 S.W.2d 451, 219 S.W.2d 779, it was held that an option to purchase leased property contained in a lease which did not provide for its termination upon dissolution of the corporate lessee survived the corporation's dissolution for the benefit of those having just claims to its assets, and trustees to whom the corporate assets were assigned could exercise such option. In Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 42 L.R.A.,N.S., 1084, the distinction between an assignment of lease by the lessee and a sub-lease is made and it is pointed out that an assignment effects a transfer of the right of possession and creates a privity of estate and contract between the original lessor and the assignee. In Lehrer v. Wegenhoft, Tex.Civ.App., 203 S.W.2d 245 (w. r. n. r. e.), it was held that Revised Statutes of 1925, Art. 5237, prohibited the lessee from assigning to a sublessee the option to purchase contained in the lease. However, the decision is based on the fact that the sub-lessor retained a reversionary interest in the property and therefore the contract was one of subletting rather than assignment, following Davis v. Vidal, supra, and hence there was no privity of estate between the original lessor and the sub-lessee. In Cauble v. Hansen, Tex.Civ.App., 224 S.W. 922, affirmed, Tex.Com.App., 249 S.W. 175, this court enunciated the rule that the assignee of a leasehold estate succeeds to all the interest of lessee and to the benefit of all the covenants and agreements of the lessor which are annexed to and run with the estate. 224 S.W. loc. cit. 924 (5–7). The covenant of the lessor in that case for which he was held liable to assignee was to purchase and deliver to lessee two sections of land.

The decision in Lewis v. Bollinger, 115 Misc. 221, 187 N.Y.S. 563, 565, in holding that the option passed with assignment of the lease and after acceptance could be specifically enforced by the assignee, gave some weight to the New York statute which provided that "'any claim or demand can be transferred'" except in certain specific cases. We have a similar statute; Art. 569, Vernon's Ann.Civ.St., provides:

"The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another."

We find nothing in the clause of the lease above quoted which evidences the landlord's consent to the assignment thereof in conformity with Art. 5237, V.A.C.S., nor in any other portion of the lease which in any way restricts the assignment of the lease or the underletting of the leased premises other than such assignment or underletting must be to a purchaser of *the business operated thereon by the lessees*. We think the words emphasized are merely descriptive of the business which may be purchased and do not imply that the original lessees shall be operating the business at the time of the assignment or sub-letting. None of the assignments evidence any intention of the assignors to retain any reversionary interest in the lease. The first assignment is evidenced by the endorsement on the lease which specifically transfers "this lease and option". Each of the other assignments is evidenced in a bill of sale by which the sellers transferred the restaurant and fixtures to the purchasers and is similar to this clause in the bill of sale given by the first assignee:

"There is likewise assigned by sellers to purchasers (vendee) all of their right, title and interest, in and to a

certain lease on said property, executed October 4, 1945, by Robert A. Moore and Helen C. Moore to Nannie Mayes and John L. Phaup, and thereafter transferred by the said Mayes and Phaup to the said Alfred R. Stewart and wife, Marie N. Stewart, the sellers herein."

except there is added in the other assignments

"and the vendee herein assumes the payment of the rentals outlined in said lease."

Nor do we find anything in the option clause above quoted nor in the circumstances surrounding the execution of the lease which indicate any intention to restrict the benefit of the option clause to the original lessees. It is common for leases to contain such an option clause, 35 C.J. p. 1038, Sec. 181; 51 C.J.S., Landlord and Tenant, § 81. The clause is of great value to the purchaser of a business which he desires to build up so that it will become a success and in order to do so it is necessary for him to make improvements of a permanent nature on the property. Such a clause undoubtedly inures to the benefit of the lessor because it enables him to realize more for the lease. It is beneficial to each succeeding assignor for like reason. See Meadow Heights Country Club v. Hinckly, supra. If there were any issue of fact as to the intention of the parties, a question which is unnecessary to decide, the jury has resolved that issue adversely to appellants. The evidence is ample to sustain their finding. We therefore hold that the option to purchase was a covenant running with the leased premises and passed with the assignments of the lease to appellee Alice M. Kirgan.

The question yet remains whether the option was exercised by Alice M. Kirgan during its life, and if so, when. As above indicated, the jury found that the option was accepted by plaintiffs but they didn't find when it was accepted. This suit was filed on September 26, 1950, during the life of the option. There appears as an original exhibit a cashier's check in the amount of $2,250.00, dated 9/23/50, issued by the First State Bank of El Paso, Texas, payable to Robert A. and Helen C. Moore. Appellee Vincent Kirgan testified that this check was tendered into court when the suit was filed. We think this tender with the filing of the suit for specific performance within the life of the option unquestionably was sufficient to support the finding that plaintiffs accepted the option. However, the undisputed testimony shows that the rent was paid under the lease up to June 4, 1950, only. Plaintiffs alleged that they exercised the option on or about May 26th, 1950. They relied on the following letter, which was prepared by their attorney and mailed to appellants and received by them:

"El Paso, Texas,
May 26th, 1950.

Mr. Robert A. Moore
Mrs. Helen C. Moore
6209 Dyer Street
El Paso, Texas.

Dear Mr. and Mrs. Moore:

As the present lessee under the lease dated October 4th, 1945, signed by each of you as lessors, covering the North 25 feet of the West 10 feet of Lot 1, and the North 25 feet of Lots 2, 3 and 4, in Block 56, of the Logan Heights Addition to the City of El Paso, I have exercised, and do hereby exercise, the option provided in such lease to purchase said real property for the total sum of $2,250.00, which I am prepared to pay in cash upon delivery to me of general warranty deed, showing a good merchantable title in you, and an abstract of title, or a guarantee title policy.

Please give this your attention that we may close the sale of this property to me within the next week.

Thanking you, I am,
Very truly yours,
(s) Vincent P. Kirgan,
Vincent P. Kirgan."

Of course, if this letter effected a valid exercise of the option, since the undisputed evidence is that appellants ignored it and appellant Helen C. Moore testified that she would not have conveyed the property to appellees under any circumstances, the appellees owed no more rent under the lease. The trial court evidently took this view

since the judgment did not allow appellants any rent, which they sought to recover in a cross-action. The question has given us no little concern; it requires a construction of the terms of the option. If the option requires that payment or tender of the purchase money accompany the notice of election to exercise it, then ordinarily payment or tender is required; if it requires merely that notice be given of the exercise of the option and leaves the matter as to payment of the purchase money to be thereafter settled, then the notice is sufficient. Ann. 101 A.L.R., p. 1432. It will be noted that the letter of May 26, 1950, is signed by Vincent P. Kirgan alone, and states "I have exercised and do hereby exercise the option provided in lease". (Emphasis ours.) As above noted the lease was assigned to Alice M. Kirgan; the undisputed evidence shows that the restaurant and lease were acquired by her as her separate property, and that her husband, Vincent P. Kirgan, managed the restaurant for her. Appellants do not stress the fact that she did not sign the letter, hence we shall not labor this point. We think the jury could properly infer that the wife authorized her husband to exercise the option in her behalf.

Among the authorities cited in the A.L.R. Annotation supra, which held that a payment or tender is necessary to exercise an option to purchase, is Killough v. Lee, 2 Tex.Civ.App. 260, 21 S.W. 970, no writ history. By the terms of the option in that case receipt of fifty dollars was acknowledged for an option to buy certain property within six days, and recited:

"The price agreed upon is twelve thousand dollars cash, *upon payment of which the said Chas. H. Lee will make deed*" etc. (Emphasis ours.)

Judge Williams said:

"The option which appellant had was to buy within six days. Therefore, whatever was requisite in order to buy was, by the express terms of the writing, required to be done within that time, and was therefore essential to invest appellant with the right to a conveyance of the land. Consequently, · unless it can be said that notice to the agent of his acceptance of the proposed trade constituted a purchase of the property by appellant, he must fail. In our opinion this conclusion is forbidden by the terms of the contract, which prescribe in what manner appellant may buy the land, viz., by the payment of $12,000 cash. The word 'buy,' in the writing, means, not simply an acceptance of the offer, but a purchase completed by payment." 21 S.W. 970.

In San Antonio Joint Stock Land Bank v. Malcher, Tex.Civ.App., 164 S.W.2d 197, 199, w.r.w.m., a lease contained the following clause:

" 'The Lessor hereby gives Lessee (August Malcher) the right to purchase the above described tract of land for a consideration of $3,009.70, plus 6% interest from June 7, 1940, to date of purchase. This option, if not exercised, expires September 30, 1941, is not transferrable, and is subject to right of sale by Lessor prior to September 30, 1941.' "

It was held that payment or tender of the consideration on or before September 30, 1941, was not necessary to effect an acceptance, but that the optionee having notified the optioner of his intention to exercise the option prior to September 30, 1941, had a reasonable time thereafter to pay the money and complete the deal. The court said:

"[3] Where an option does not contain provisions to the contrary all that is required by the optionee is that he notify the optionor, prior to the date of expiration, of his decision to exercise the option and he thereafter has a reasonable time within which to complete the deal. 66 C.J. 500; Horgan v. Russell, 24 N.D. 490, 140 N.W. 99, 43 L.R.A.,N.S., 1150; Killough v. Lee, supra." 164 S.W.2d loc.cit. 200 (3).

This case was cited with approval by the Supreme Court in Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141, loc.cit. 144 (3). There was also cited Lockwood v. Frost, Tex.Civ.App., 285 S.W. 874, which was also an option case. In Oliver v. Corzelius, Tex.Civ.App., 215 S.W.2d 231,

the option was contained in a letter reciting that a deal had been closed on certain Colorado property, with the following agreement:

"'That at any time within one year starting January 5th, 1944 to January 5th, 1945 should Curt pay me back all the money I have invested plus operating expenses and other expenses plus six per cent interest I have agreed to deed him the property back.'" 215 S. W.2d loc.cit. 236.

There was no payment or tender during the one year period. This court held that since the optionor had repudiated the contract she waived her right to a formal legal tender, 215 S.W.2d 240 and the Supreme Court approved this holding, Corzelius v. Oliver, 148 Tex. 76, 220 S.W.2d 632, loc.cit. 634, notwithstanding the vigorous concurring opinion of Chief Justice Price in which following Killough v. Lee, supra, he took the view that tender or payment during the life of the option was essential to the formation of any contract. 215 S.W.2d 242. The terms of the option in the present case are very similar to those in the Malcher case; indeed it might be plausibly contended that the option in the Malcher case is more susceptible of a construction that actual payment or tender during the term of the option was intended than in the present case, because of the provision in the lease here that the lessors will furnish a policy of title insurance or an abstract. Such provisions require time and the expenditure of money for fulfillment and it is reasonable to assume that the lessors would not attempt to fulfill them unless they knew that the optionee had exercised her option. Certainly the option in Oliver v. Corzelius more strongly indicates an intention to require payment or tender in order to exercise it than that in the present case. It is our conclusion that the option here did not require payment or tender during its term to effect an exercise or acceptance of the offer to sell, but that notice during the term was all that was required, and that the letter of May 26, 1950, was sufficient for this purpose.

The point that appellee Alice M. Kirgan had refused and abandoned the option and that it was cancelled because she requested Mrs. Moore to grant her a new lease and make improvements to the building on the premises is entirely without merit. Mrs. Moore testified that she refused to make a new lease or to make improvements, and Mrs. Kirgan's request that she do so could have no possible bearing on the lease including the option, which she had. Nor did the letter constitute a counter proposal. It was couched in the exact terms of the offer contained in the option.

Likewise without merit is appellants' point that the court erred in striking out a portion of their second amended answer and cross-action wherein they alleged in substance that appellees during their tenancy had repeatedly violated the criminal laws in the operation of the business on the leased premises, especially the liquor laws of this state, and that appellee Vincent P. Kirgan had been convicted for such violation and as a result thereof appellees had been notified by appellants that the lease was cancelled and to vacate the property. At common law in the absence of a provision for forfeiture a lessee does not forfeit his term by using the demised premises for illegal purposes or business. 32 Am. Jur. p. 730, Sec. 864. In some jurisdictions the statutes expressly authorize the lessor to terminate the lease where the demised premises are used by the lessee for particular illegal purposes, id. and annotation, Annotated Case 1913c, 1354. Appellants have referred us to no such statute in this state. We have examined the Texas Liquor Control Act, Articles 666-1 to 667-27 inclusive of Vernon's Penal Code of the State of Texas and find no such statutory provision.

By appropriate points appellants complain because the court would not permit them to introduce evidence of financial conditions, location of the property, increase in population, and business conditions which were not within the contemplation of the parties when the lease was executed, and could not have been foreseen, and which gave the optionee an unfair and unjust speculative profit. The theory on which equitable relief by specific performance is sometimes denied because of conditions which may have arisen after the con-

tract was made, and which render its enforcement a hardship and inequitable is rather nebulous. See Note, Vol. 28 Tex. Law Review, p. 270. We think the question is foreclosed in this State by the following quotation from the opinion of the Supreme Court in the recent case of Bennett v. Copeland, Tex.Sup., 235 S.W.2d 605, loc.cit. 609(3–5):

"The point is settled by the principle thus stated in the Annotation to Schmidt v. Barr, 333 Ill. 494, 165 N.E. 131, 65 A.L.R. 1, at page 75: 'Mere hardship is not sufficient ground for denial of the right to specific performance of a contract otherwise subject to enforcement. * * * Especially where it was fairly and voluntarily assumed as part of a contract. * * * In this respect a contract for the sale of land will be enforced as a matter of right, regardless of its wisdom or folly, if fairly and understandingly made. * * * Ross v. Carroll, 1923, 156 Minn. 132, 194 N.W. 315, is authority for the view that courts cannot arbitrarily refuse specific performance of a contract, because they deem it unwise, or because subsequent events disclose that it will result in a loss to defendant; but to justify the refusal of this relief it must appear that the defendant had been misled and overreached to such an extent that the contract is unconscionable.' "

Appellants do not contend that they were in any way misled or overreached when they executed the lease. The court did not err in excluding this character of evidence and these points are overruled.

It is necessary to reform the judgment of the trial court since it does not provide for delivery of the cashier's check or payment of any money to appellants.

It is ordered that the Clerk of this Court return with the mandate to the Clerk of the District Court the cashier's check above referred to, plaintiffs' original exhibit No. 4, and that the District Clerk deliver such check to appellees and take their receipt therefor; that the judgment of the trial court be reformed so as to provide that within thirty days from the date when the mandate of this court is filed in the trial court appellees shall deposit with the Clerk of that Court the sum of $2,250 and that within such time appellants shall deposit with that Clerk a warranty deed conveying the property described in the lease to appellee Alice M. Kirgan, and shall also deposit with the Clerk a policy of title insurance or abstract of title as provided in said option; and that upon receipt of such deed and policy or abstract the Clerk shall deliver such papers to appellee Alice M. Kirgan, and pay the $2,250 so deposited to appellants; that should appellees deposit said sum of $2,250 within such time and appellants fail to deposit such deed and policy or abstract, this decree shall operate as a conveyance of such property to appellee Alice M. Kirgan, and shall divest appellants of all title and interest therein, and within twenty days from the expiration of such thirty day period appellees may procure a title policy or abstract as specified in said option or as nearly in conformity therewith as they are able to obtain, and upon presentation of a bill for the reasonable cost thereof (the reasonableness of such cost to be determined by the court) same shall be paid by the Clerk and deducted from the $2,250 deposit and the balance of such deposit paid to appellants; but should appellees fail to deposit the said sum of $2,250 within said thirty day period they shall forfeit all right to specific performance of the contract evidenced by their acceptance of such option. The judgment as so reformed is affirmed.

Reformed and affirmed.

On Appellants' Motion For Rehearing.

One of the points presented by appellants in their brief is that the answer of the jury to question No. 2 that plaintiffs exercised and accepted the offer under the option according to its terms is not supported by any evidence. This point is also raised in appellants' motion for a re-hearing. The theory on which appellants rely in support of this point is that the letter of May 26, 1950, which demand-

ed that appellants furnish an abstract of title or guarantee title and deed, upon which appellees would exercise the option and pay $2250.00 was a counter proposition and not an acceptance of the option. We are not at all in accord with this proposition. However, as pointed out in our original opinion, the letter of May 26, 1950, was signed by Vincent P. Kirgan alone. It does not purport to have been written in behalf of his wife. Also, as pointed out in our opinion, the lease was assigned to the wife as her separate property and the restaurant was purchased by her as her separate property. The record reveals that the husband, Vincent P. Kirgan, was managing the restaurant for his wife. There is no other evidence in the record which tends to show that Vincent P. Kirgan was authorized by his wife to exercise the option for her. It is elementary we think that an option of this character must be accepted or exercised by the optionee strictly in accordance with its terms in order to create a contract with the optionor. The Acts of 1913, 1917 and 1921, Art. 4621 Vernon Sayles' Annotated Civil Statutes 1914, and Vernon's Annotated Civil Statutes Sup. 1918, 1922, Vernon's Ann. Civ.St. art. 4614, grant to the wife the sole management, control and disposition of her separate property, both real and personal. Prior to 1913 the sole management of the separate property of the wife was given to the husband. Under the present law the wife may appoint her husband as her agent to manage her separate property, but in the absence of such appointment he has no more authority to bind her than any other person. See Gohlman, Lester & Co. v. Whittle, 114 Tex. 548, 273 S.W. 808. The mere fact that the husband was authorized to manage the restaurant for his wife may be some evidence of his authority to exercise the option for her but we think is insufficient to support the finding that the option was accepted by plaintiffs. It was not only necessary that Mrs. Kirgan should authorize her husband to exercise the option for her, but also that notice of this fact should be brought home to the Moores, before there could be a valid acceptance of

the option. There is no evidence of such notice other than the letter of May 26, 1950. This does not purport to have been written by Kirgan on behalf of his wife but by him "as the present lessee under the lease", which he was not. It states "I am prepared to pay", not that his wife is prepared to pay "upon delivery to me of general warranty deed", impliedly we think meaning a conveyance of the property to him—not to Mrs. Kirgan, in view of the subsequent language "Please give this your attention that we may close the sale of this property *to me* within the next week." (Emphasis ours.) We therefore hold that there is no evidence that Mrs. Kirgan gave notice to the Moores of her acceptance of the option and that the option was not accepted by the letter of May 26, 1950.

The lease contains the following provision:

"Provided, however, that if said rent or any part thereof shall remain unpaid for ten days after it shall become due and without demand made therefor, it shall be lawful for said lessor or his agents, heirs or assigns without notice or demand into said premises to reenter and the same to have again, repossess and enjoy as in his first and former state, and *thereupon* this lease and everything therein contained on the lessor's behalf to be done and performed shall cease, determine and be utterly void." (Emphasis ours.)

The undisputed evidence shows that no rent was paid after June 4, 1950. However, under this provision the lessee's breach of the covenant to pay rent did not ipso facto work a forfeiture of her rights under the lease, there being no express provision to that effect and the above quoted clause being a condition subsequent and not a limitation on the estate of lessee. 27 T.J., p. 64, Sec. 15. Therefore, the lease was in effect at the time when the suit was filed and the cashier's check tendered in court on September 26, 1950, which was within the life of the option. Plaintiffs did not tender or offer to pay the rent which was due when they filed the suit for specific performance, it being their

theory that the option was accepted by the letter of May 26. They were not entitled to specific performance, unless they alleged and proved that they had performed or were willing to perform the lease contract. Since the case was tried on an erroneous theory, but the record does not disclose that appellee would not have been entitled to recover had it been tried on the right theory, it is our duty to remand the cause rather than to render judgment for appellants. Benoit v. Wilson, ex. Sup., 239 S.W. 2d 792, loc.cit. 799 (8); Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178.

Appellants' motion for a rehearing is granted, our former judgment set aside, and the cause reversed and remanded.

Reversed and remanded.