**CLAJON GAS CO., Appellant,**

v.

**William TIPTON, Appellee.**

**No. 6418.**

Court of Civil Appeals of Texas,
El Paso.

May 7, 1975.

Rehearing Denied June 4, 1975.

Bullock & Scott, Russell W. Neisig, Midland, for appellant.

Paul H. Dionne, Fort Stockton, for appellee.

## OPINION

PRESLAR, Chief Justice.

This is a contract construction case which was tried to the Court without a jury, and judgment was entered that the Appellant, Clajon Gas Co., was bound to furnish natural gas to Appellee, William Tipton, for use on lands owned by William Tipton, pursuant to a contract between Allen Tipton and Clajon Gas Co. We affirm.

The contract is that Allen Tipton will purchase gas from Clajon to operate irrigation wells on certain lands in Pecos County, Texas. William Tipton is the successor party to Allen Tipton by virtue of a provision in the contract providing for assumption and by virtue of the fact that he now owns the land, and the contract provides that it is a covenant running with the land. Section 2 is the provision which creates the controversy in question, and it provides:

"2. For and during the periods set out in numerical paragraph 11 hereof, Consumer agrees for himself, his heirs and assigns, to purchase natural gas from Company, for utilization as the total power requirements (particularly, but without limitation, for the operation of internal combustion engines) necessary for the lifting of water for use in the irrigation of the following described land in Pecos County, Texas:

East Half (E/2) of Section 2, Block 48, Twp. 8, T&P Ry. Co. Survey; and the Tipton Cotton Gin located in the Southwest corner of Section 30, Block C–2, Public School Land Survey

Said natural gas is to be delivered at a point of delivery hereinafter defined to the extent such fuel is available, and Company agrees to · supply the same to the extent such fuel is available. The terms of this contract are and shall be deemed covenants running with the above described land, and shall extend to any and all wells utilized in whole or in part in the irrigation of the above described land regardless of whether such well or wells be located on said land. * * *"

The contract was executed between Appellee's father, Allen Tipton, and Clajon in 1965. At that time, Allen Tipton owned the property described as the E/2 of Section 2 and 20 acres out of the Southwest corner of Section 30, where the gin was located. Appellee, William Tipton, owned the remainder of Section 30 at that time and now owns all of the properties involved. The gin ceased to operate in 1971, and in 1973 Appellant notified Appellee of a price increase on gas on Section 30, contending that it was not bound by the contract to furnish gas to that section since the gin no longer operated. The contract is for a ten-year period and the price is fixed for such period, and there is no controversy as to the E/2 of Section 2, so the question involved is whether Section 30 is covered by the contract or not.

At the time the contract was executed, William Tipton was farming the E/2 of Section 2 and Section 30, and Clajon ran its pipelines to those sections and set a meter in the E/2 of Section 2 and in the Southwest corner of Section 30 near the gin on the land owned by Allen Tipton. This is designated as Meter S–25 and the testimony is that it served not only the gin but the wells located on Section 30. On the trial of the case, Appellee Tipton contended that the contract was ambiguous, and the trial Court found that it was ambiguous and permitted oral testimony as to surrounding circumstances at the time of execution, conversations with Clajon representatives at the time of execution, and evidence as to the conduct of the parties to

the years that the contract was alive. The trial Court also admitted a letter from Clajon to an attorney, which will be discussed later in this opinion. This evidence, if admissible, substantiates the trial Court's judgment and interpretation of the contract as binding on Clajon to continue to furnish gas under the contract price to Appellee Tipton for the irrigation of lands located on Section 30. Appellant's first five points of error are grouped together and relate to this finding of ambiguity and the resulting admission of evidence—it being its position that the contract is not ambiguous and no parol evidence is admissible. We think the evidence substantiates the trial Court's finding of ambiguity but will not dwell on it at length because there are other reasons why parol evidence is admissible. Looking at the contract from its four corners, it is obvious that the subject of the contract, or its purpose, is gas for the irrigation of farm lands. Aside from the fact that one does not "irrigate cotton gins," the question is: What lands are involved, or, more specifically, is Section 30 involved? In many places in the contract, it speaks of the "following described land" and the "above described land." These references throughout the contract to the described land include Section 30 and raise a question as to whether the parties intended that these various provisions of the contract applied to Section 30 or only to the gin. We think the trial Court properly construed it as being ambiguous.

■ Regardless of whether the contract was ambiguous or not, we think parol evidence was admissible under the rule as stated in Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449 (1942, opinion adopted):

"Whether or not, strictly speaking, the language of the grant is ambiguous need not be discussed, for even though it is not ambiguous on its face parol evidence was nevertheless properly admitted to apply the language to the subject with which it dealt for the purpose of ascer-

taining the real intention of the parties. First National Bank of Amarillo v. Rush, Tex.Com.App., 210 S.W. 521; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007; Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579; Murphy v. Dilworth et al., 137 Tex. 32, 151 S. W.2d 1004."

This is an often-applied rule of law, and we think it is applicable here to ascertain the real intention of the parties. The parol evidence admitted in this case clearly established that it was the intentions of the parties that gas should be provided for the operation of the wells on Section 30. Appellee testified that when he was approached by Clajon to buy gas from it he was under contract with another supplier of gas for Section 30, but his father was not, so the contract was made with his father's name and it used the description of the gin to keep from jeopardizing Appellee's position with the other supplier. It is also undisputed that Appellee was billed for the gas supplied to the gin and Section 30 through the Meter S–25 from the inception of the contract in 1965. And until 1973 Clajon never raised any contention as to the application of the contract to Section 30.

■ There is yet another rule applicable here. It is set forth in Henry v. Powers, 447 S.W.2d 738 (Tex.Civ.App.—Houston (1st Dist.) 1969, no writ):

"In First National Bank v. Rush, 210 S.W. 521 (Tex.Com.App.1919), it was held that a contract apparently unambiguous would be subject to construction if ambiguity appeared when read in the light of the situation of the parties and the circumstances as they then existed. The court quoted extensively from the case of Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A.,N.S., 383, a portion of which reads: '* * * The words of a contract, in themselves, may be plain, yet

when applied to the situation with which it deals, not plain, the literal sense leading to such unreasonableness as to suggest that the parties probably did not so intend. * * * ' "

In the case before us, the literal sense of providing irrigation for a gin is so unreasonable as to suggest that the parties probably did not so intend.

There was admitted into evidence a letter from Clajon to an attorney, with a copy to the Appellee, authorizing and instructing the attorney to institute collection proceedings against the Appellee for gas on Section 30 through the Meter S–25. We think the letter was admissible to show the construction placed on the contract by the parties, for no principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the Courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves. The Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed, so said the Supreme Court in James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558 (1950). If the admission of this letter was erroneous, it was harmless error because it was only cumulative of other evidence already before the Court.

Appellant presents points of error that the judgment is erroneous because laches, estoppel and ratification were pled by Tipton, as plaintiff, as grounds for recovery, and such are defenses and may not be used to create a contract where one does not exist. Under the construction that the Court gave the contract and which we have affirmed, those pleas are not the basis of the judgment and these points of error are of no moment. All points of error have been considered and all are overruled.

The judgment of the trial Court is affirmed.