Charles ODUM et ux., Appellants,

v.

Sidney P. SIMS, Jr., Appellee.

No. 16359.

Court of Civil Appeals of Texas, San Antonio.

Dec. 17, 1980.

Robert A. Sone, Leakey, for appellants.

Nick Duncan, Del Rio, for appellee.

OPINION

CADENA, Chief Justice.

Plaintiffs, Charles Odom and wife, Ruth Odom, appeal from a judgment denying their prayer that defendant, Sidney P. Sims, Jr., be compelled to convey certain land to them.

The instrument on which plaintiffs' claim is based is a printed form lease. The pertinent portions are as follows:

The State of Texas }

County of }

Know all Men by these Presents:

Made this 29th day of October, A.D. 1975 by and between Sidney P. Sims, Jr., known herein as lessor and Charles Odom, known herein as lessee, . . .

Witnesseth, that the said lessor does by these presents lease and demise unto the said lessee the following described property, to-wit: Lying and being situated in the County of Real, State of Texas, and being that 25 acre tract of land awarded to Sidney P. Sims Jr. on June 17, 1975 by District Court, Leakey, Texas, in the Partition Judgment in the case styled Sidney P. Sims Jr. Vs Mozelle Hart et al. Lessee to be furnished official plat copy with this lease. Lessee has option to purchase said tract of land at $325.00 per acre and any additional land in said survey which may accrue to said lessor before termination of this lease on May 15, 1976. For the term of Eight Months (8) beginning the 15th day of October A.D. 1975 and ending the 15th day of May, 1976, paying therefor the sum of One Dollar and other considerations payable May 15, 1976. (Underlined portions indicate typewritten material inserted in the printed form by defendant.)

Plaintiffs' pleadings may be summarized as follows:

1. About 60 days prior to the execution of the October 29, 1975, agreement, the

parties reached an oral agreement concerning the sale of the land in question by defendant to plaintiffs, with the understanding that the agreement would be reduced to writing later. According to the oral agreement, plaintiffs would pay $325 per acre for the land in question. The purchase price was to be cash, or plaintiffs were to pay 29% of the purchase price as a down payment.

2. After the oral agreement had been reached, plaintiffs, with defendant's consent, moved onto the land, cleared a portion on which they firmly affixed their mobile home to a foundation, installed a water and sewer system, built corrals and pens and fenced in the property, all at a cost of about $7,000.00.

3. Within 30 days after execution of the agreement, plaintiffs notified defendant that they would exercise their option to purchase the land and told defendant that they were ready to either make the 29% down payment or pay the entire purchase price. If defendant wanted the entire purchase price paid at once, plaintiffs indicated that they would do so, since they had a loan commitment. Defendant signified his willingness to furnish a warranty deed and a title policy in order to satisfy the lender.

4. Defendant procrastinated, despite numerous requests by plaintiffs, and finally told plaintiffs that he would not sell the land to them.

Defendant filed a general denial and a counterclaim alleging the execution of the lease and option to defendants and that plaintiffs had failed to exercise the option on or prior to May 15, with the result that the option expired on that date. Defendant also alleged that plaintiffs had remained in possession of the land without paying rent, and prayed for a writ of possession and judgment for the reasonable rental value of the land.

According to the trial court's findings of fact, (1) the contract signed by the parties on October 29, 1975, covered the property in question and contained an option to purchase; (2) plaintiffs moved onto the property after October 29, 1975, but prior to January 1, 1976, and have continued to live on such property, making improvements; (3) plaintiffs did not exercise the option to purchase in writing and after May 15, 1976, defendant sold the property to a third party; (4) plaintiffs notified defendants that they would borrow the money and pay the purchase price in full or that they would make a down payment of 29% of the purchase price and pay the remainder in installments satisfactory to defendant; (5) plaintiffs "did all they could do to enforce defendant's obligation to complete the sale ... but defendant made himself unavailable to them to complete the transaction."

The conclusions of law filed by the trial court recite that the sale of the land by defendant to a third party rendered the specific enforcement of the contract impossible and that, even if specific enforcement *were possible* the court "under the principles of equity", declined to grant specific performance.

The finding that plaintiffs did not exercise the option to purchase in writing is irrelevant. A written option to purchase real property may be orally accepted. *San Antonio Joint Stock Land Bank v. Malcher*, 164 S.W.2d 197 (Tex.Civ.App.—San Antonio 1942, writ ref'd w. o. m.). Unless the option contains provisions to the contrary, all that is required of the optionee is that he notify the optionor, prior to the expiration of the option, of his decision to exercise the option. *Id.*, at 200. The trial court found, and defendant does not challenge such finding, that plaintiffs notified defendant of their decision to exercise the option and did all within their power to complete the transaction. The culmination of the sale was prevented only by defendant's making "himself unavailable to [plaintiffs] to complete the transaction."

There is testimony to the effect that after May 15, 1976, defendant entered into discussions with Mr. and Mrs. J. W. Bowden concerning the sale of the land in question to the Bowdens, and that a contract calling for the sale of such land by defendant and the purchase thereof by the Bowdens was

executed on June 4, 1976. The contract was not introduced in evidence and there is in the record no indication of its provisions other than that the Bowdens agreed to pay $400 an acre for the land. At the trial, which took place 30 months after the execution of the Bowden contract, defendant testified that he still owned the land. J. W. Bowden testified at the trial, but his testimony merely refers to the execution of the contract in June, 1976. There is nothing in the record which indicates that defendant is not still the owner of the land in question.

Defendant urges that plaintiffs' brief presents no point of error challenging the sufficiency of the evidence to support the finding that defendant had sold the land to the Bowdens. Plaintiffs' third point is as follows: "It was error for the trial court to hold that the contract was unenforceable because the land was sold to a third party." The argument under this point of error points out that the contract was never carried out and that the land was never conveyed to the Bowdens. Considering the argument under the third point of error, it is clear that plaintiffs' complaint is that the evidence does not support the finding that defendant no longer owns the land in question. It has long been the rule that an appellate court will pass on both the sufficiency and the merits of a "point" in the light of the statement and argument under such point of error. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943); *Don's Ambulance Service, Inc. v. City of San Antonio*, 526 S.W.2d 547 (Tex. Civ.App.—San Antonio 1975, writ ref'd n. r. e.).

We do not understand the "principles of equity" which prompted the trial court to deny specific performance of the contract in this case. Defendant suggests that it would be unfair to the Bowdens to compel defendant to execute a deed to the property to plaintiffs. A judgment in favor of plaintiffs in this case would in no way affect the questions, if any, involved in a dispute between plaintiffs and the Bowdens, who are not parties to this litigation. "Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable,—when it possesses none of those features which, in ordinary language, influence the discretion of the court—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach." *Bennett v. Copeland*, 149 Tex. 474, 235 S.W.2d 605, 609 (1951).

The judgment of the trial court is reversed and judgment is here rendered in favor of plaintiffs.