Paul E. MAXWELL and Cheryl Dale, Appellants,

v.

Jim LAKE d/b/a Jim Lake Company #2, Appellee.

No. 05–83–00091–CV.

Court of Appeals of Texas, Dallas.

May 18, 1984.

Ronald E. Holub, Dallas, for appellants.

Ward Williford, Terence M. Murphy, Dallas, for appellee.

Before AKIN, SPARLING and SHUMPERT, JJ.

SHUMPERT, Justice.

This appeal is from a take-nothing judgment rendered by the court against plaintiffs/appellants Maxwell and Dale in an action for breach of an option contract. The crucial questions on this appeal are: (1) May an optionee exercise an option by giving notice within the option period and tendering performance within a reasonable time thereafter when the contract is silent with respect to the method of exercising the option? We answer this question in the affirmative. (2) Was extrinsic evidence admissible here to show the parties' intent, either because there was an ambiguity in the contract, or because the contract was silent with respect to the method of exercising the option? We conclude that it was not, because the contract was unambiguous, and because there was no evidence of the circumstances surrounding the formation of the contract. Consequently, the option was properly exercised when Maxwell and Dale gave notice to appellee Lake and tendered performance shortly thereafter, thus binding Lake to perform under the contract. Accordingly, we reverse the trial court's judgment and remand with instructions to order specific performance.

*Factual Setting*

The record reflects that the parties first actively considered a conveyance of the property in question in March, 1980. Contracts of sale dated March 12, 1980, and March 18, 1980, were drafted, and earnest money of $5,000 was deposited on each occasion, but Maxwell and Dale were unable to obtain financing either time and the deals collapsed. Maxwell and Dale subsequently leased the property from Lake for a three year term commencing June 15, 1980. Under paragraph 35 of the lease agreement, Lake gave Maxwell and Dale a one year option to purchase the property under the following terms:

35. SPECIAL CONDITIONS:

c) Tenant is hereby given one (1) year from June 15, 1980 an option to purchase this property on the following conditions:

1. Sales price is $212,600.00 of which $12,600.00 is to be in art as outlined in Exhibit B attached.

3. Balance of sales price to be paid in cash to Landlord at closing.

4. If a loan does not become available during the one year option period then Tenant will have one additional year in order to obtain financing.

5. If a loan is made available to Tenant at any time during this one (1) year option or the one (1) year extension and Tenant elects not to accept said loan, then this option is null and void and of no further force and effect.

F. If Tenant elects to exercise either of the above mentioned options then the closing will be in basic accord with a sales contract signed by Jim Lake Co. #2 (Seller) and Paul E. Maxwell and Cheryl Dale (Purchasers) dated March 18, 1980 and shown as Exhibit C attached.

In a letter to Maxwell and Dale dated May 11, 1981, Lake extended the option to purchase for an additional year, until June 15, 1982. On June 15, 1982, Maxwell and Dale hand delivered a letter to Lake purporting to exercise the option. Two days later, they delivered a cashier's check for $5000 to Safeco Title and a letter to Lake in which they advised him that they were "ready, willing and able to pay the balance of the purchase price in full" and offered to do so. On that same day, June 17, 1982, Lake refused to close the sale contending that the option was not properly exercised because the sale had to be closed before June 15, 1982.

Maxwell and Dale filed suit seeking specific performance of the contract, and alternatively, damages for sums expended for improvements on the property in reliance upon the option. The case was tried to the court, and in addition to the lease agreement and contracts of sale, both sides offered testimony as to the parties' intent at various times during the dealings between the parties. The trial court rendered a take-nothing judgment against Maxwell and Dale and later made findings of fact and conclusions of law. Maxwell and Dale contest the trial court's judgment and findings of fact and conclusions of law in eighteen points of error.

### Method of Exercising the Option When the Contract is Silent

Initially, we note that the option clause in the lease agreement is silent as to the manner in which the option is to be exercised. That clause does state that if the option is exercised, then the closing of the deal will be "in basic accord" with the contract dated March 18, 1980, allegedly attached to the lease agreement. The contract dated March 12, 1980, however, was attached by mutual mistake. This discrepancy is of no import in this context, however, as both the March 12 and the March 18 contracts were silent regarding how the option is to be exercised.

■ Maxwell and Dale contend that written notice to Lake on the final day of the option period followed by a tender of the purchase money two days later was sufficient as a matter of law to exercise the option. Lake, on the other hand, argues that the parties intended that either the full purchase price, or alternatively, the $5,000 earnest money that Maxwell and Dale tendered under the two previous contracts of sale, had to be tendered by June 15, 1982, the final day of the option period to exercise the option. We agree with Maxwell and Dale. Accordingly, we hold that where a contract is silent regarding the method of exercising the option, giving timely notice to the optionor and tendering performance within a reasonable time thereafter is sufficient to exercise the option. Our holding is in keeping with the rule of construction

that unless an option to purchase contains provisions to the contrary, the optionee is only required to notify the optionor prior to the expiration of the option period, and then tender performance within a reasonable time thereafter to exercise the option. *San Antonio Joint Stock Land Bank v. Malcher*, 164 S.W.2d 197 (Tex.Civ.App.—San Antonio 1942, writ ref'd w.o.m.); *Odum v. Sims*, 609 S.W.2d 881 (Tex.Civ.App.—San Antonio 1980, no writ); *Farrell v. Evans*, 517 S.W.2d 585, 589 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). *See also Austin Presbyterian Theological Seminary v. Moorman*, 391 S.W.2d 717 (Tex.1965), *cert. den.*, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965).

■ Our holding is also in keeping with traditional concepts of contract law. When an option is given in exchange for legal consideration, the power of the option holder is generally called a power of acceptance. The giving of an option creates a power in the optionee to be exercised by giving notice of consent to perform. Upon the giving of such notice of acceptance of the option within the time limit, the legal result is a binding promise because a consideration was paid for it. 1A A. Corbin, Corbin on Contracts § 264 (1963).

The purpose of a purchase option is to give the optionee the right to purchase, at his election, within an agreed period, at a named price, which presumably was considered satisfactory by the optionor in case the option should be exercised at any time during the option term. *Sinclair Refining Co. v. Allbritton*, 14 Tex. 468, 218 S.W.2d 185 (1949). Once the option is exercised, a binding, enforceable contract of sale has been created. *Sinclair*, 218 S.W.2d at 188; *Farrell*, 517 S.W.2d at 589. Our holding is in keeping with these traditional concepts of the mechanics of option contracts. The option is first exercised creating a binding promise to perform, and the sale is later completed.

Furthermore, our holding is in accord with the practicalities of real estate transactions. Generally, upon the exercise of an option in a real estate purchase situation, the seller accumulates the paperwork nec-

essary to furnish the buyer with marketable title. *See Lambert v. Taylor Telephone Co-Operative*, 276 S.W.2d 929 (Tex.Civ.App.—Eastland 1955, no writ). If marketable title is not furnished, the deal will normally not be closed.

Lake contends that the optionee must close the sale before the date the option expires to exercise the option. Under that theory, if the option holder must tender the purchase price within the option period, then in fairness, the seller must be ready to perform, which means he must be able to give the buyer proof of marketable title and have the closing documents prepared on every final day of every option period in case the option holder should elect to exercise the option.

We cannot accept Lake's argument because, as a practical matter, it is not the way business is transacted. An option in this setting is an offer to an option holder to enter into a contract of sale. *Corbin* at § 264. Many options expire unexercised for a multitude of reasons. Presumably, the consideration given for the option has made it worth the seller's while to give the purchaser that opportunity. The economic calculus is not presently designed, however, for the seller to be compensated for the machinations he must go through to be prepared to close a deal each time an option period is to expire.

In short, option contracts as they presently exist are for the benefit of both the purchaser and the seller. The price of an option would increase, and the attractiveness of option contracts would decrease, however, if a seller had to be ready to close at the end of each option period. We recognize that if the parties wish to contract for the closing to occur on the final day of the option period, they are free to do so, but we are unwilling to read that provision into a contract which is silent regarding the manner of the exercise of the option.

A similar result under similar reasoning was reached in San Antonio *Joint Stock Land Bank v. Malcher*, 164 S.W.2d 197 (Tex.Civ.App.—San Antonio 1942, writ ref'd w.o.m.). In *Malcher*, the option clause stated:

> The Lessor hereby gives Lessee (August Malcher) the right to purchase the above described tract of land for a consideration of $3,009.70, plus 6% interest from June 7, 1940, to date of purchase. This option, if not exercised, expires September 30, 1941, is not transferrable, and is subject to right of sale by Lessor prior to September 30, 1941.

The court posed the question of whether Malcher was required to pay or to tender the purchase money to the bank on or before the date the option was to expire, or whether having notified the bank of his intention to exercise the option, he would have a reasonable time after that date to pay the money and complete the deal. The court stated:

> We conclude that he would have such reasonable time. (after the option date to pay the money) It will be borne in mind that the contract does not require that the option be accepted in writing not later than September 30, 1941, neither does it require in express terms that the money be paid or tendered not later than that date; nor does it require that the money be tendered in cash. It simply provides that the "option, if not exercised, expires September 30, 1941." ... Where an option does not contain provisions to the contrary all that is required is that he notify the optionor, prior to the date of expiration, of his decision to exercise the option and he thereafter has a reasonable time to complete the deal. *Malcher*, 164 S.W.2d at 199–200.

The court then held that Malcher had tendered money to the bank within a reasonable time after September 30, and that Malcher was therefore entitled to specific performance of the option contract. The *Malcher* holding was subsequently followed in *Odum v. Sims*, 609 S.W.2d 881 (Tex.Civ.App.—San Antonio 1980, no writ), and *Farrell v. Evans*, 517 S.W.2d 585, 589 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

■ Lake has argued, alternatively, that to exercise the option, the parties intended that Maxwell and Dale deposit $5,000 earnest money by June 15, 1982. The trial

court agreed. We are again unwilling, however, to read a provision into an option clause, this time stating that earnest money must be deposited to exercise the option, when, as Lake conceded at trial, the language of the contract does not so provide. Because we have construed the contract, as a matter of law, to permit a reasonable time after notification of the exercise of the option for tendering performance, the trial court's fact finding regarding the parties' intent is immaterial.

In support of his contentions, Lake cites *Greenbaum v. Cortez*, 644 S.W.2d 510 (Tex.App.—Corpus Christi 1982, writ dismissed), and *Killough v. Lee*, 2 Tex.Civ. App. 260, 21 S.W. 970 (1893, no writ). We decline to follow *Greenbaum* because it is distinguishable and *Killough* because it was incorrectly decided.

In *Greenbaum*, the option clause stated: Seller gives buyer option to purchase said property for $16,500 at the end of 5 years with ⅔ of rent money going toward down payment. *Greenbaum*, 644 S.W.2d at 511.

Citing *Estate of Griffin v. Sumner*, 604 S.W.2d 221 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.), the *Greenbaum* court stated that "[w]here a contract provides for a fixed sum but has no provision concerning time or method of payment, the general rule is that the consideration is to be paid in cash upon the exercise of the option." *Greenbaum*, 644 S.W.2d at 511.

This case is distinguishable from *Greenbaum* and *Estate of Griffin* on its facts. Unlike the contracts in those two cases, the contract here provides for time and method of payment of the purchase money. It provides for the purchase money to be paid in cash at the closing. The *Greenbaum* and *Estate of Griffin* holdings, therefore, are inapplicable. Further, we doubt the soundness of *Greenbaum* because it mentions neither *Killough* nor *Malcher*, nor other cases containing the two potential outcomes for the situation in which the contract is silent regarding how to exercise an option. We note further, that the language in the option clause of *Greenbaum* is very similar to that in *Odum v. Sims*,

609 S.W.2d 881, (Tex.Civ.App.—San Antonio 1980, no writ), one of the *Malcher* progeny, in which a result opposite to *Greenbaum* was reached.

Lake also cites *Killough v. Lee*, 2 Tex. Civ.App. 260, 21 S.W. 970 (1893, no writ), in support of his contentions. In *Killough*, the option clause stated:

Received from Dr. D.S. Killough fifty dollars, for an option to buy within six days.... The price agreed upon is twelve thousand dollars cash, upon payment of which the said Chas. H. Lee will make deed for his five-sixths interest and make application to court for the sale of interest of his minor son.

The *Killough* court then stated two principles. The first was that if an option is given which is to be accepted by payment within a given time, then the time of payment is essential and payment is a condition precedent to the vesting of any right in the vendee. The second principle was that if the offer or option requires assent and acceptance within a given time, such assent must be made within the time prescribed, and the contract thereby becomes concluded and mutual. The court then held that the contract required not simply that appellant should assent to the terms proposed within the six days and pay the price at some subsequent time, but that he should buy within that time, paying the price in cash. *Killough*, 21 S.W. at 971.

We note that *Malcher* cites *Killough* for two propositions but does not distinguish its opposite outcome based on very similar language in the respective option clauses. *Killough* acknowledged the reasoning later used in *Malcher* but held that the clause in *Killough* contemplated payment of the purchase money by the option date.

In *Moore v. Kirgan*, 250 S.W.2d 759, 766 (Tex.Civ.App.—El Paso 1952, no writ), the court cited and discussed *Malcher* and *Killough* in successive paragraphs but did not distinguish the two. The *Moore* court merely decided that the language in the option contract before it was very similar to that in *Malcher*, and that *Malcher*, therefore, was controlling. The *Moore* court stated that the Texas Supreme Court

had approved the *Malcher* case in *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141 (1947), but that approval was for a holding unrelated to the issue at hand. Further, the *Moore* court reversed its decision on rehearing, deciding that the option had never been exercised.

We fail to perceive a real difference between the option clause language in *Malcher* and that in *Killough*. The *Killough* court, however, concluded that payment was required to exercise the option. *Killough*, 21 S.W.2d at 971. Because we cannot distinguish *Killough* from *Malcher* and its progeny based on the language of the respective option clauses, we conclude that *Killough* was incorrectly decided. The *Killough* court should have held that giving notice and tendering performance shortly thereafter was sufficient to exercise the option because the contract was silent regarding how the option was to be exercised, and not that payment was required to exercise the option under the terms of the contract. We decline, therefore, to follow *Killough*.

### Ambiguity

■■■ Lake next argues that the lease was ambiguous, and that extrinsic evidence, therefore, was admissible to explain the ambiguity. The question of whether a contract is ambiguous is one of law for the court. *R & P Enterprises v. LaGuarta, Gavrel and Kirk*, 596 S.W.2d 517 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1980). If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous, and extrinsic evidence is not admissible. *LaGuarta*, 596 S.W.2d at 519. Conversely, a contract is ambiguous if the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain as to which one of two or more meanings is proper. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951). In that situation, extraneous evidence is admissible to determine the true meaning of the instrument. *LaGuarta*, 596 S.W.2d at 519. Mere disagreement

over the interpretation of an instrument does not make it ambiguous. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex.1982).

■■■ Lake initially asserts that the lease agreement is ambiguous because it incorporates by reference the March 18, 1980, contract of sale, but the March 12, 1980, contract was attached instead to the lease agreement. He contends, therefore, that reference must be made to a document outside of the Lease Agreement for its terms, and that the document is therefore ambiguous on its face. The provision to which Lake refers states as follows:

*If* tenant elects to exercise either of the above mentioned options *then* the closing will be in basic accord with a sales contract signed by Jim Lake Co. #2 (Seller) and Paul E. Maxwell and Cheryl Dale (Purchasers) dated March 18, 1980 and shown as exhibit C attached. (emphasis added)

We disagree with Lake's contention. First, both parties have agreed that the March 12, 1980, contract of sale was attached by mutual mistake. The mistaken attachment of a document does not create an ambiguity. *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 154. Further, the lease agreement does not, as Lake contends, provide that the option to purchase will be in accord with the terms of the prior contract of sale. The clause in the lease agreement states that *if* the option is exercised, *then* the *closing* will be in accord with a prior sales contract. The use of the word "then" sets forth a condition precedent which must occur before the clause describing the closing ever comes into play. *City of Pinehurst*, 432 S.W.2d at 519. The language regarding the March 18, 1980, contract had nothing to do with the exercise of the option. We hold, therefore, that no ambiguity exists in the mistaken attachment of the wrong contract of sale.

■■■ Lake next contends that the term "option to purchase" is ambiguous in the following provision:

Tenant is hereby given one (1) year from June 15, 1980 an option to purchase this property on the following conditions:

We disagree with Lake's contention. The term "option to purchase" is unambiguous. It is undisputed that Maxwell and Dale had an option to buy the property. Lake argues that the parties understood that phrase to mean that the sale had to be closed prior to the expiration of the option. We have found no rule of construction which gives that meaning to the words "option to purchase." Although it is true that *Greenbaum* and *Killough* held that that meaning could be inferred from those or similar words, we have already concluded that *Greenbaum* is distinguishable because there was no provision there providing for the time and method of payment of the purchase money, and that *Killough* was incorrectly decided. Because we hold that "option to purchase" can only mean an option to buy, and that the phrase implies nothing concerning the method of exercising the option, we hold that the phrase is unambiguous.

Lake also argues that the contract is ambiguous because it does not state how the option is to be exercised. We disagree. The failure of a written instrument to express an intention of the parties will not admit proof of such intention on the theory that the writing is ambiguous. The rule permitting extrinsic evidence to explain an ambiguous writing has application only when the intention is expressed but in uncertain language susceptible of more than one interpretation. If the written contract is silent, the question is not one of interpreting the language of the writing but rather one of determining the legal effect of the writing. *Banner v. Taylor*, 118 S.W.2d 826 (Tex.Civ.App.—Eastland 1938, writ ref'd); *Summit Insurance Co. of New York v. Central National Bank of Houston*, 624 S.W.2d 222, 226 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Don Drum Real Estate Co. v. Hudson*, 465 S.W.2d 409 (Tex.Civ.App.—Dallas 1971, no writ).

### Surrounding Circumstances

Lake next argues that the trial court properly considered surrounding circumstances in determining the parties' intentions, and that based on evidence of the surrounding circumstances showing the parties' intent, the trial court correctly held that the option was not properly exercised. We disagree. If an unambiguous writing has been entered into between the parties, and there is a question when an attempt is made to apply the language to the subject matter of the contract, proof of circumstances at the time of the formation of the contract is admissible to enable the court to apply the language used therein to the facts as they then existed. The fact that the parties may have intended to make a different contract from that embodied in the writing, or afterwards thought that they had actually made a different one, becomes immaterial, in the absence of a plea of fraud, accident, or mistake. *Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941) (per Alexander, C. J.).

All evidence here of the surrounding circumstances and of the parties' intent is evidence of the parties' words and actions in the days immediately before the option was to expire. Lake has presented no evidence of the surrounding circumstances or of the parties' intentions at the time the lease agreement containing the option contract was signed or at the time that the letter extending the option for another year was written. Under *Murphy*, because there is no evidence of the parties' intentions at either of the above-mentioned times, and neither fraud, accident, nor mistake has been pleaded, evidence of surrounding circumstances is inadmissible and we may look only to the four corners of the document itself. As we have already held, the document is unambiguous, and provides as a matter of law, that the option could be exercised by giving notice within the option period and tendering performance within a reasonable time thereafter.

Lake cites three cases for the proposition that surrounding circumstances should be considered. *Scott v. Walden*, 140 Tex. 31, 165 S.W.2d 449 (Tex.Comm'n App.1942, opinion adopted), followed *Murphy* and only permitted evidence showing circumstances at the time the contract was made. *Clajon Gas Co. v. Tipton*, 523 S.W.2d 438

(Tex.Civ.App.—El Paso 1975, no writ), allowed the introduction of extrinsic evidence on three grounds. That court found ambiguity in the contract, relied on *Scott* which followed *Murphy,* and relied on the rule stated in *Henry v. Powers,* 447 S.W.2d 738 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ), the third case cited by appellant, which applied the rule of looking at circumstances as they existed at the time the parties entered into the contract. These cases do not support Lake's position.

If a contract is silent regarding how to exercise an option, the option may be exercised by notifying the optionor by the final date in the option clause and tendering performance within a reasonable time thereafter. We hold that here, as in *Malcher,* Maxwell and Dale gave proper notice and tendered performance to Lake within a reasonable time, thereby properly exercising the option. Accordingly, we reverse the trial court's judgment and remand with instructions to the trial judge to order specific performance of the contract and to determine a reasonable attorney's fee to be awarded to Maxwell and Dale. Costs are taxed to Lake.

Reversed and remanded.