**Opinion filed December 31, 2019**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-18-00008-CV

_____

## ALICE RUTH PETERS, INDEPENDENT EXECUTRIX OF THE ESTATE OF JO ALICE STOUT, DECEASED, Appellant

## V.

## JERRY BOB YOUNG AND WIFE, KAREN ELAINE YOUNG, Appellees

**On Appeal from the 50th District Court**

**Baylor County, Texas**

**Trial Court Cause No. 11229**

## M E M O R A N D U M   O P I N I O N

After a bench trial in a declaratory judgment action, the trial court held that Jerry Bob Young and his wife, Karen Elaine Young, as optionees, had duly exercised an option to purchase certain property described in the option contract and in a real estate contract that was attached to and incorporated into the option contract. The trial court ordered the Estate of Jo Alice Stout, the successor to one of the original

optionors, to sell the property to the Youngs. The trial court also held that there was no consideration for the transfer of a royalty interest referred to in the option contract and in the real estate contract. We affirm.

The property that is the subject of this lawsuit is a portion of what was known as the Stout Ranch. The Stout Ranch is in Baylor and Throckmorton Counties. Before their deaths, Lowe L. and Mary Alice Stout were the owners of the ranch. After Lowe and Mary Alice died, their six children inherited equal undivided interests in the ranch.

In 1986, after the six children had inherited the ranch, 728.2 acres of the ranch were partitioned to Betty Lynn Stout, one of Lowe and Mary Alice's six children. The other five children retained undivided interests in the remainder of the ranch. The partition arrangement covered the surface as well as the mineral estate except for certain royalty interests. As far as those royalty interests relate to this case, suffice it to say that Jo Alice retained a nonparticipating royalty interest in the property partitioned to Betty Lynn.

Jo Alice Stout and Jack L. Stout were two of Lowe and Mary Alice's six children. In 2001, Jo Alice and Jack, through their respective attorneys-in-fact, entered into an option contract with the Youngs. Under the terms of the option contract, Jack and Jo Alice sold the Youngs an option to purchase "the property . . . described for purposes of this contract as the Sosolik/Tucker Place and the Miller Creek Place, and being more particularly described in Exhibit 'A' which is attached to and by this reference made a part of this Option Contract." The Sosolik/Tucker Place was described as the first tract in Exhibit A; the Miller Creek Place was described as the second tract. Thirteen different metes and bounds descriptions that comprise those two tracts were also attached to the option contract. Exhibit A also contained a third description: "All of Seller's right, title, and interest in the oil, gas, and other minerals in and under and that may be produced from" Betty Lynn's 728.2

2

acres; the attachment did not contain a metes and bounds description of the third tract.

The option contract was conditioned on the partition of that part of the Stout Ranch that remained after the partition of Betty Lynn's 728.2 acres. The purpose was to partition the remainder of the ranch into specific acreage so that each undivided interest owner would own specific acreage rather than an undivided interest. Further, the option contract contained a provision that the Youngs could waive the partition condition. In 2009, the Youngs waived that condition and executed and tendered to Jack and Jo Alice the real estate contract that the parties had attached to the option contract. Jack, Jo Alice, and the Youngs had agreed in the option contract that the Youngs could exercise the option "by execution and tender . . . of the real estate sales contract" that was attached to the option contract.

When Jack and Jo Alice chose not to proceed under the option contract, the Youngs sued them for specific performance. During that litigation, both Jack and Jo Alice died, and the independent executrixes of the respective estates, Anne F. Stout and Alice Ruth Peters, continued to participate in the litigation as representatives of the estates. At the conclusion of that litigation, the trial court entered a judgment in favor of the Youngs and ordered specific performance of the option contract. That judgment was the subject of a prior appeal to this court. Because the appellants in that appeal waived each of the issues that they presented on appeal, we affirmed the judgment of the trial court. *Peters v. Young*, No. 11-14-00120-CV, 2015 WL 6121351, at *3 (Tex. App.—Eastland Oct. 8, 2015, no pet.) (mem. op.).

After we issued our prior opinion, Anne F. Stout and Alice Ruth Peters, as representatives of Jack and Jo Alice's estates, signed the real estate contract. However, the parties continued to disagree on the purchase price that was provided for in the contract. The Youngs and Jack Stout's estate settled the dispute as to the

interest held by Jack's estate and closed the sale of that interest. The Youngs and Jo Alice's estate were never able to agree on the proper computation of the purchase price under the real estate contract, and the Youngs filed this suit for declaratory judgment as a result of that failure. For ease of reference, we will refer to Jo Alice's estate as "the Estate."

In their suit for declaratory judgment, the Youngs asked the trial court to declare that the Estate sell "the interest in the property owned by [the Estate], in the amount set forth in the agreement which was negotiated in the Option Agreement." Additionally, the Youngs sought damages and attorney's fees. The Estate answered, sought a declaratory judgment based upon the Estate's interpretation of the instruments, and asked the trial court to award attorney's fees.

As we have indicated, after a bench trial, except for the royalty interest in the 728.2 acres partitioned to Betty Lynn, the trial court adopted the construction championed by the Youngs. As to the royalty interest of the Estate in the Betty Lynn property, the trial court held, in its judgment, that there was "never a meeting of the minds between the parties as to the consideration for the inclusion in the Option and the Contract for the undivided 1/6 nonparticipating royalty interest . . . in the Betty Lynn [Stout] property." Therefore, the trial court did not order a sale of that nonparticipating royalty interest.

The Estate brings four issues on appeal. First, the Estate contends that the trial court misconstrued the unambiguous language of the real estate contract and the option contract into which it was incorporated and that, in doing so, the trial court rewrote the real estate contract "to say that the purchase price would be reduced based on the [Estate's] percentage of ownership in the property." Next, in its second issue on appeal, the Estate maintains that the trial court made a fact finding based on lack of consideration when that theory was not pleaded by any party. In its third issue on appeal, the Estate takes the position that the trial court's findings "that there

4

was no consideration for and no meeting of the minds on the purchase price for the mineral interest [are] erroneous as a matter of law because they are contrary to the undisputed facts and unambiguous contract language." In the alternative, the Estate asks: "[I]s there any legally or factually sufficient evidence supporting those findings?" In the Estate's fourth issue, it alleges that "the trial court's findings that the Youngs duly exercised their option contract to purchase the real estate and have always been ready, willing and able to purchase the property [are] erroneous as a matter of law because they are contrary to the undisputed facts and the unambiguous contract language." Again, in the alternative, the Estate poses the question: "[I]s there any legally or factually sufficient evidence supporting those findings?"

We will first address the Estate's argument, in its first issue on appeal, that the trial court erred when it construed the contracts to conclude that the Youngs were obligated to pay the Estate only for the interest that the Estate owned in the property. In our review, we will apply the well-established rules of contract construction.

The trial court found that the real estate contract was unambiguous. That finding has not been disputed. When a written contract is unambiguous, the construction of the contract is a question of law for the court. We review the trial court's legal conclusions de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). When the meaning of a contract is disputed, our primary objective "is to give effect to the written expression of the parties' intent." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019). "Objective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (footnote omitted) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)). We, therefore, "presume parties intend what the words of their contract say" and interpret the language of the contract according to its "plain, ordinary, and generally accepted

5

meaning" unless the contract directs otherwise. *Id.* at 764 (first quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126; then quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

Because "[c]ontext is important," we consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none are rendered meaningless. *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019). No one phrase, sentence, or section of an agreement should be isolated and considered apart from the other contractual provisions. *Pathfinder Oil & Gas*, 574 S.W.3d at 889. A contract can consist of more than one document; documents "pertaining to the same transaction may be read together"; and "courts may construe all the documents as if they were part of a single, unified instrument." *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)).

Article One of the real estate contract contains the following provision: "By this Contract, Seller sells and agrees to convey, and Purchaser purchases and agrees to pay for, *all of Seller's interest in the Property* . . . for the consideration and upon and subject to the terms, provisions, and conditions set forth below . . . ." (emphasis added). The next article "below," Article Two of the real estate contract, is entitled "PURCHASE PRICE." In Article 2.01, entitled "Amount of Purchase Price," the parties agreed as follows:

> The Purchase Price for the Property is a three-tiered price based upon the number of acres determined by the survey as hereinafter provided multiplied by the following applicable price per acre:
>
> > (a) If up to Sixty (60%) percent of the ownership interests in the Property sell to Purchaser the purchase price shall be $300.00 per acre;
> >
> > (b) If up to Eighty (80%) percent of the ownership interests in the Property sell to Purchaser the purchase price shall be $325.00 per acre;

6

(c) If One Hundred (100%) percent of the ownership interests in the Property sell to Purchaser the purchase price shall be $350.00 per acre.

Because Jo Alice and Jack were to convey less than a combined 60% interest in the "Property," there is no dispute that the applicable price per acre was $300.

The trial court construed the contract to mean that the purchase price under the real estate contract (except for the nonparticipating royalty interest regarding Betty Lynn's property) was to be computed by "multiplying $1,622,580.00 (5,408.6 [acres] x $300.00) by the percentage of interest that [Jo Alice's estate] owns in the entire 5,408.6 acres"; that interest was to be determined by a licensed title insurance agency. The number of acres was the total number of net acres shown by a survey conducted as provided for in the agreement.

In the option contract, the parties provided that the real estate contract that they had attached to the option contract governed the price and terms of the sale. As we have said, in Article One of the real estate contract, the "Purchase and Sale" provision, the parties provided, in part, that "Seller sells and agrees to convey, and Purchaser purchases and agrees to pay for, *all of Seller's interest* in the Property" (emphasis added). In Article 2.01 of the real estate contract, the "Purchase Price" provision, the parties provided, in part: "*The Purchase Price for the Property* is a three-tiered price based upon the number of acres determined by the survey as hereinafter provided multiplied by the following applicable price per acre" (emphasis added).

In order to determine the purchase price for the "Seller's interest in the Property," Article One and Article 2.01 must be read together—the price per acre for the "Property" must first be calculated under Article 2.01. That price must then be reduced by the percentage of ownership that the estate owns in the property as set

7

forth in Article One; that is the price that the Youngs agreed to pay for the estate's interest.

We do not believe that the plain language of the real estate contract supports the Estate's interpretation otherwise. The Estate's calculation of the purchase price for the "Property" solely under Article 2.01 of the real estate contract ignores the fact that in Article One the parties agreed that the Youngs were purchasing an interest in the "Property" rather than the "Property" itself. Under the unambiguous terms of the real estate contract, the trial court correctly construed the contractual purchase price due from the Youngs to the Estate. We overrule the Estate's first issue on appeal.

Because the Estate's fourth issue on appeal depends in large part on the purchase price question, we will discuss it before we discuss the Estate's second and third issues on appeal. The Estate makes multiple claims in its fourth issue on appeal. The claims are based upon their contention that "[t]he Youngs Rejected the Option Contract by Failing to Exercise It in Strict Accordance with Its Terms." The Estate argues that the Youngs rejected the option contract when they failed to tender the purchase price that the Estate asserts to be the correct purchase price but instead offered numerous other amounts, when they failed to "tender performance 'within a reasonable time,'" and when they failed to object to the survey as provided in the real estate contract.

"Exercise of an option, unless excused in rare cases of equity, must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement." *Meadows v. Midland Super Block Joint Venture*, 255 S.W.3d 739, 743 (Tex. App.—Eastland 2008, no pet.). As we have noted, the parties agreed in the option contract that the Youngs were to exercise the option "by execution and tender to [the Estate] of the real estate sales contract attached as Exhibit 'B'." In its brief, the Estate notes that there is no dispute that "the Youngs executed the Real Estate

8

Contract and tendered it to Ms. Peters within the option period." We hold that the option contract was duly exercised when the Youngs executed and tendered the real estate contract.

However, although the option contract contained specific provisions for the exercise of the option, the Estate contends that the Youngs were also obligated to tender the purchase price within a reasonable time and that their failure to do so constituted a rejection of the option. It is true that, when "*a contract is silent regarding the method of exercising [an] option, giving timely notice to the optionor and tendering performance within a reasonable time thereafter is sufficient to exercise the option.*" *Maxwell v. Lake*, 674 S.W.2d 795, 798 (Tex. App.—Dallas 1984, no writ) (emphasis added). In this case, however, the option contract was not silent as to how the option was to be exercised. The parties agreed upon specific terms regarding the exercise of the option contract, and the evidence is undisputed that the Youngs complied with those specific terms. The Youngs executed the option in accordance with its very specific terms when they signed the real estate contract and tendered it to the Estate. At that time, "a binding, enforceable contract" was completed. *Id.*

Events that occurred subsequent to the exercise of the option, such as offers and rejections made after the exercise of the option, although perhaps relevant to other issues not presented here, do not appear to us to be relevant, under the facts of this case, to the question of whether the option was properly exercised. The Youngs exercised the option when the Youngs presented the Estate with the real estate contract that bore their signatures—the method by which the parties had explicitly agreed that the option would be exercised.

If the tender of the purchase price within a reasonable time after the exercise of the option was required, as argued by the Estate, the record reveals that the Youngs did that. The record reflects that the Youngs first tendered the signed real

9

estate contract on August 24, 2009, and again on January 19, 2016 (eleven days after this court issued mandate in the parties' previous appeal). In accordance with the terms of the real estate contract, the tender of the purchase price must necessarily await the preparation of a survey as agreed by the parties. In accordance with the real estate contract, it was the Estate's obligation to provide that survey. The survey of the property was completed in August 2016, and a legal description was prepared in September 2016. The Youngs met with the Estate's representative the next month, October 2016. At that time, as the Estate concedes, the Youngs offered to pay a purchase price computed by reducing the number of net acres shown by the survey by the Estate's percentage of ownership in the net acres and multiplying that result by $300, the price per acre. As the trial court held, and as we have also held, that is the purchase price upon which the parties agreed.

Also in its fourth issue on appeal, the Estate challenges the trial court's findings that the Youngs have always been ready, willing, and able to purchase the acreage. The trial court's findings of fact have the same weight as a jury's verdict; we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards that we apply when we review the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina*, 881 S.W.2d at 297. We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re Estate of Standefer*, 530 S.W.3d 160, 164 (Tex. App.—Eastland 2015, no pet.) (citing *BMC Software Belgium*, 83 S.W.3d at 794).

Under the legal sufficiency standard, we consider the evidence in the light most favorable to the trial court's finding and disregard contrary evidence unless a reasonable factfinder could not. *Webb v. Schlagal*, 530 S.W.3d 793, 802 (Tex.

App.—Eastland 2017, pet. denied) (citing *City of Keller* v. *Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). The legal sufficiency challenge must be sustained if there is no evidence or only a scintilla of evidence to support the finding. *Id.* In a factual sufficiency review, we consider all the evidence and will uphold the trial court's finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Serv. Corp. Int'l v. Aragon*, 268 S.W.3d 112, 118 (Tex. App.—Eastland 2008, pet. denied).

As the Estate acknowledges, the Youngs offered to tender payment in October 2016. Bob Young testified at trial that he had always been ready and willing to purchase the Estate's undivided interest. The issue of whether a party to a contract is "ready, willing, and able" to perform is a question of fact. *DiGuiseppe v. Lawler*, 269 S.W.3d 588, 596 (Tex. 2008). Here, in addition to the attempted tender of the purchase price, the trial court was entitled to rely upon Bob Young's testimony. *See Mustang Amusements, Inc. v. Sinclair*, No. 10-07-00362-CV, 2009 WL 3487796, at *5 (Tex. App.—Waco 2009, no pet.) (mem. op.) (trial court could believe testimony that buyer was ready, willing, and able to perform). The evidence is neither legally nor factually insufficient to support the findings of the trial court.

We have considered all of the Estate's arguments in its fourth issue on appeal. For all of the foregoing reasons, we overrule Appellant's fourth issue.

The Estate's second and third issues on appeal pertain to the nonparticipating royalty interest related to the property partitioned to Betty Lynn. In its findings of fact, the trial court found that "[t]here was never a meeting of the minds between the parties as to the consideration for the inclusion in the Option and the Contract of Sale for the undivided 1/6 nonparticipating royalty interest (referred to as a mineral interest in the documents) in the Betty Lynn [Stout] property." Also in its findings of fact, the trial court found that "[t]here is no consideration to be paid for the mineral

estate on the Betty [Stout] property." In its judgment, the trial court declared that "[t]here was never a meeting of the minds between the parties as to the consideration for the inclusion in the Option and the Contract" of the royalty interest in Betty Lynn's tract. The trial court did not order a sale of that interest.

In its second issue on appeal, the Estate maintains that the trial court erred when it entered findings on a theory—lack of consideration—that was not pleaded by either party. Therefore, the Estate maintains, the judgment was not supported by the pleadings.

The Estate bases its complaint on the proposition that lack of consideration is, under Rule 93(9) of the Texas Rules of Civil Procedure, "a defense that must be supported by a verified plea." *See* TEX. R. CIV. P. 93(9). The Estate then argues that, because neither the Youngs nor the Estate raised the issue, it was not before the trial court and the trial court should not have determined that there was no consideration as to the royalty interest in Betty Lynn's tract.

The issue of a meeting of the minds as to consideration was before the trial court because it was an element of the Youngs' case and related directly to their cause of action. *See Belew v. Rector*, 202 S.W.3d 849, 854 (Tex. App.—Eastland, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)). Earlier in this opinion, we referred to the language that the trial court used in its judgment as to the lack of a meeting of the minds as to the consideration for the royalty interest. The trial court held: "[I]t is the opinion of the Court that there was never a meeting of the minds . . . as to the consideration" for including the royalty interest in the deal. We believe that language to be tantamount to a finding that the Youngs did not meet their burden of proof as to the royalty interest.

However, even if we are incorrect, there is yet another reason to affirm the judgment of the trial court as to its exclusion of the royalty interest from the sale. In the "Recitals" portion of the option contract, the parties referred to the property that

12

was the subject of the option contract as "the Stout Ranch, and further described for purposes of this contract as the Sosolik/Tucker Place and the Miller Creek Place, and being more particularly described in Exhibit 'A' which is attached to and by this reference made a part of this Option Contract." The first tract listed in that exhibit was the "Sosolik/Tucker Place" followed by a reference to two metes and bounds descriptions that were located in an attachment to Exhibit A. The second tract mentioned was the "Miller Creek Place" followed by a reference to eleven metes and bounds descriptions that were also located in the attachment to Exhibit A. The third tract described was "[a]ll of Seller's right, title, and interest in the oil gas and other minerals in and under and that may be produced from [Betty Lynn's tract]." The attachment to Exhibit A did not contain a metes and bounds description of the third tract.

Similarly, in the real estate contract, the Youngs agreed to purchase and the Estate agreed to sell "the Sosolik/Tucker Place and the Miller Creek Place" with the "correct legal description being determined from the survey provided for in this Contract." The parties referred to an attached Exhibit A. There were three tracts listed in that exhibit. The first tract shown was the "Sosolik/Tucker Place" followed by the comment "ATTACH LEGAL DESCRIPTIONS." The second tract listed was the "Miller Creek Place" also with the comment "ATTACH LEGAL DESCRIPTIONS." The third property described was "[a]ll of Seller's right, title, and interest in the oil gas and other minerals in and under and that may be produced from [Betty Lynn's tract]."

A de novo review of this unambiguous contract leads us to the conclusion that, in the contract, the Youngs never agreed to buy and the Estate never agreed to sell the royalty interest connected to Betty Lynn's property even though the royalty interest was listed in the exhibits to the agreements. Therefore, if there were any error as to the holding of the trial court regarding consideration, which we have held

13

not to be the case, it was harmless. TEX. R. APP. P. 44.1(a). For all the foregoing reasons, we overrule the Estate's second and third issues on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


December 31, 2019

Panel consists of: Bailey, C.J., Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.